1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NATIONAL PRODUCTS, INC.,

                Plaintiff,

    v.

ARKON RESOURCES, INC.,

                Defendant.

NO. C15-1553-JPD

ORDER GRANTING IN PART AND
DENYING IN PART THE PARTIES'
MOTIONS *IN LIMINE*

       This matter comes before the Court on the parties' motions *in limine*. Dkt. 92; Dkt. 98.
The parties are advised that the findings and conclusions regarding the motions *in limine*, like
all rulings *in limine*, are preliminary and can be revisited at trial based on the facts and
evidence as they are actually presented. Subject to these principles, the Court rules as follows
for the guidance of the parties:

              I.       PLAINTIFF'S MOTIONS IN LIMINE

**1. Motion to Exclude Evidence and Testimony Regarding Arkon's Estimated
    Overhead and Costs of Goods for Calculating Recoverable Infringer's Profits.**

       GRANTED IN PART AND DENIED IN PART. The Lanham Act provides that "in
assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must
prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). If an infringer were
not permitted to deduct all costs incurred in generating the gross revenues, including overhead

ORDER - 1

costs, the trademark owner would be awarded more than just profits and the infringer would not only be deprived of whatever benefit it derived from the infringement, as was the apparent intent of Congress, but would also suffer affirmative punishment. In the Ninth Circuit, a defendant may only deduct costs if it proves that such costs were "of actual assistance" in the production, distribution, or sale of the infringing product. *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1332 (9th Cir. 1984); *see also Winterland Concessions Co., v. Fenton*, 835 F. Supp. 529, 533 (N.D. Cal. 1993) (same). If the defendant fails to adequately prove such costs, the trademark owner is entitled to all gross profits. *Lindy Pen Co. v. Vic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016) ("Once the plaintiff demonstrates gross profits, they are presumed to be the result of the infringing activity. The defendant thereafter bears the burden of showing which, if any, of its total sales are not attributable to the infringing activity, and, additionally, any permissible deductions for overhead." *See also Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1012 (9th Cir. 1994) ("[W]here infringing and noninfringing elements of a work cannot be readily separated, all of a defendant's profits should be awarded to a plaintiff.").

National Products, Inc. ("NPI") moves the Court to exclude a report titled "Sales by Year by Item Number Number," which purports to list sales by Arkon of its accused products through June 29, 2016. Dkt. 99 (Ware Decl.), Ex. 1-2 (Sales spreadsheets). Arkon's witness and the author of this report, Steven Hull, testified during his deposition that the "estimated cost of goods sold" and "overhead expense" percentages in the chart (59% and 38%, respectively) were not, in fact, tabulated from actual costs incurred from the sale and manufacture of only the accused products. *Id.*, Ex. 3 (Hull Dep. Tr.) at 54:17-69:22; Ex. 6 (financial control sheet)). Instead, they were calculated by dividing expenses incurred for all

Arkon products, whether accused or not, from the sales of all Arkon products. *Id.* Arkon's damages expert, Thomas Young, then took these estimated percentages into account in his August 19, 2016 report to calculate a "net profit" of between 2-3% for the accused product for the purpose of determining infringer's profits under 15 U.S.C. § 1117(a). *Id.*, Ex. 7 (Young Report) at 7.

NPI argues that Mr. Hull's testimony revealed that with the exception of legal fees, Arkon would have incurred the overhead expenses regardless of whether it sold the accused products or not. *Id.*, Ex. 3 (Hull Dep. Tr.) at 91:5-92:24. NPI further argues that the estimated costs of goods sold percentage is unrelated to Arkon's actual cost of goods for the accused products in the accused product sales spreadsheet. *Id.*, Ex. 2 (sales spreadsheet). *See also* Dkt. 99, Ex. 3 (Hull Dep. Tr.) at 88:11-16 (agreeing with the statement that the Est. COG number in the spreadsheet "doesn't reflect any actual cost for the purchase of that item by Arkon."). Thus, NPI contends that Arkon cannot show that any of these overhead expenses actually assisted in the production, distribution, or sale of the accused products, because Arkon's witness stated that the only new expenses in the "estimated overhead costs" incurred were for the legal fees incurred in this litigation, which are not deductible expenses in calculating lost profits. *Id.*, Ex. 3 (Hull Dep. Tr.) at 91:5-92:24. Thus, NPI asserts that Arkon's "estimated overhead costs" should be excluded, as improperly based upon all products. Similarly, NPI asserts that Arkon's estimates for the cost of goods sold ("COGS") has no relationship to the actual costs of the accused products, and should therefore be excluded. NPI contends that Arkon and its damages expert could have computed its actual cost of goods sold from manufacturer and shipping invoices available to it and produced in this litigation, but instead relied on an "Est COGS at 59%" figure which "doesn't reflect any actual cost for the purchase" of the accused products and therefore do not reflect costs that were "of actual assistance in the

production, distribution or sale of the infringing products." *Kamar Int'l*, 752 F.2d at 1332; 15 U.S.C. § 1117(a).[1] Thus, plaintiff asks the Court to exclude all evidence and testimony at trial regarding Arkon's cost and expense estimates, which are found in Arkon's summary financial documents, as well as the damages report of Thomas Young.

Arkon responds that although NPI believes that the costs and overhead were calculated incorrectly, the summary chart was but one of the pieces of evidence relied upon by defendant's expert. Arkon alleges that Steven Hull is a fact witness, and not an expert witness, and the summary charts are not direct evidence. Arkon asserts that "whether or not the chart is admitted into evidence, there will be substantial evidence of costs in this matter." Dkt. 108 at 5. Further, as a lay witness who is the controller of the company, Mr. Hull is allowed to give limited opinion testimony as to costs, and he is likely to testify as to overhead costs, both general and specific to these products. *Id*. Arkon points out that NPI has not objected to evidence of the bare costs of the parts from Arkon's suppliers, and Arkon provided detailed income statements for 2014, 2015, and part of 2016 generated by its computer accounting system that itemized costs and operating expenses. Dkt. 111 (Karish Decl.), Ex. O. Costs and overhead were also detailed at length in the deposition of Mr. Hull. *Id*., Ex. P (Hull Dep. Tr.) at 54:6-69:12. Thus, Arkon argues that NPI should be able to prevent Arkon from presenting testimony on "estimated" costs and overhead when it will already be presenting testimony on direct costs (in the form of dozens of receipts and invoices as well as from business records

---

[1] NPI asserts that by using the "Est COGS at 59%" figure, Arkon overstates the cost of goods sold by at least two to four times the actual cost to Arkon for many sales of its accused products. *See* Dkt. 99, Ex. 9 (2/6/2014 email from Arkon's President Paul Brassard writing that "We don't need to base our sell price on our manufacturing costs because this item has an established value in the market [by RAM]"). NPI asserts that Arkon has taken advantage of the premium pricing level NPI has achieved in the market to price its product.

that are admissible under Fed. R. Evid. 803(6)) from a witness with direct knowledge of the costs and overhead.

NPI's motion is GRANTED IN PART and DENIED IN PART. Specifically, NPI's request to exclude the summary report titled "Sales by Year by Item Number," which purports to list sales by Arkon of its accused products through June 29, 2016, is GRANTED. *See* Dkt. 99 (Ware Decl.), Ex. 1-2 (Sales spreadsheets). As discussed below, NPI's motion to exclude the damages report of Arkon's expert Thomas Young, Dkt. 99 (Ware Decl.), Ex. 7, is also GRANTED. However, NPI's motion to exclude all "all evidence and testimony at trial regarding Arkon's cost and expense estimates" is DENIED.

NPI is correct that Arkon's witness and the author of the report, Steven Hull, testified during his deposition that the "estimated cost of goods sold" and "overhead expense" percentages in the chart (59% and 38%, respectively) were not tabulated from actual costs incurred from the sale and manufacture of only the accused products, but were instead calculated by dividing expenses incurred from the sales of all Arkon products. *Id.*, Ex. 3 (Hull Dep. Tr.) at 54:17-69:22; Ex. 6 (financial control sheet)). Notably, Arkon does not attempt to argue that the costs and overhead figures in that chart were calculated correctly. At oral argument, Arkon simply asserted that it would be very burdensome to provide more exact figures. The summary charts are not admissible. Dkt. 99, Ex. 1-2.

However, the Court agrees with Arkon that although the Arkon's summary financial documents should not be admitted at trial, Mr. Hull shall be allowed to testimony as a lay witness regarding his direct knowledge of the costs and overhead costs, both general and specific to the accused products. In addition, Arkon can present direct evidence to substantiate these costs. To the extent that Mr. Hull provides opinion testimony regarding costs or

overhead, plaintiff shall have an opportunity to cross-examine him and also impeach him based upon his prior deposition testimony.

**2. Motion to Exclude Expert Testimony of Thomas Young.**

GRANTED. NPI argues that Arkon's damages expert, Thomas Young, should not be permitted to testify at trial because his expert report purporting to calculate the "net profit" from the sale of accused products utilized the faulty figures (discussed above) provided by Mr. Hull and unclear methodology. Dkt. 98 at 6-7. As discussed above, Mr. Young concluded that "Arkon likely made around $7,152 in net profit from sales of the products at issue after September 30, 2016" after he used Steven Hull's estimate that the cost of goods sold and overhead were 59% and 38%, respectively, and subtracted the combined percentage from 100% (representing total revenue). Dkt. 98, Ex. 7 (Young Report) at 2, 8. NPI contends that because "all evidence, arguments or reference related to the 'Est COGS%' and 'EST OH%' should be excluded as irrelevant, Mr. Young should be precluded from testifying as to the infringer's net profits opinions in his report." Dkt. 98 at 7. In addition, "because Mr. Young's report does not disclose any other opinion, all other potential testimony from Mr. Young should be excluded as being outside the scope of his report." *Id.* (citing Fed. R. Civ. P. 26(a)(2)(b), 27(c)(1)).

Arkon responds that the Court should reject plaintiff's argument that because Mr. Young relies upon information that should be excluded under Motion *in Limine* No. 1, Mr. Young's opinion should be excluded as a discovery sanction for going beyond the extent of facts required to be disclosed under Fed. R. Civ. P. 26. Dkt. 108 at 7. Arkon asserts that "where an expert report relies on allegedly faulty data, that data goes to the weight – not the admissibility – of the report. Plaintiff may take issue with some of the facts or summary data presented to Young, but that is no reason to prevent Young from testifying." *Id.* In addition,

Arkon points out that NPI did not do a proper *Daubert*/FRE 702 analysis regarding Mr. Young, who relied upon several documents in reaching his conclusions. *Id*. at 7-8. Arkon asserts that "there are fertile grounds for inquiry at trial, but plaintiff's problem with one narrow document relied upon by Young is not sufficient to completely foreclose that inquiry." *Id*. at 8.

The Court agrees with NPI that Arkon's damages expert Thomas Young should not be permitted to testify at trial. Mr. Young's report does not explain his methodology, but appears to have calculated the "net profit" from the sale of accused products by utilizing the faulty figures (discussed above) provided by Mr. Hull. Dkt. 98 at 6-7. It appears undisputed that Mr. Young utilized Steven Hull's estimates regarding cost of goods sold and overhead at 59% and 38%, respectively, and then subtracted the combined percentage from 100% (representing total revenue), to arrive at a net profit of between 2-3%. Dkt. 98 at 7; Dkt. 99, Ex. 7 (Young Report) at 2, 8. Arkon simply argues that although "the document at issue in Motion in Limine No. 1 was relied upon by Young," it is not necessarily "the sole basis for his conclusions." Dkt. 108 at 8. As the only opinion offered in Mr. Young's report was the amount of Arkon's net profits from the sales of the products at issue after September 30, 2016, and it is undisputed that he relied upon a faulty estimates to calculate this number, Arkon has not established how Mr. Young's report or testimony would be helpful to the jury. Instead, any possible testimony would be related to the subject matter of Motion *in Limine* No. 1, or new opinions that are outside the scope of his report.

**3. Motion to Exclude Evidence, Attorney Arguments or Reference That Any Portion of Arkon's Post-Filing Revenue for Product Numbers Corresponding to the Accused Products is Not, in Fact, Revenue from Arkon's Infringing Activity.**

DENIED. NPI asks the Court to preclude Arkon from arguing that any portion of

the revenue in its financial spreadsheets (Dkt. 99, Exs. 1-2) post-dating the filing of plaintiff's complaint should be excluded from damages, as that revenue is attributable to Arkon's alleged infringing activity and therefore part of its relevant gross profits. Dkt. 9 at 7-8. Specifically, NPI argues that Arkon began selling the accused robust mount products in March 2014, and selling a redesigned version of the robust mounts in 2016. *Id*. at 8. NPI initiated this action on September 30, 2015, accusing specific products in Arkon's "robust mounts" product line of infringing NPI's registered hourglass shape trade dress. Dkt. 1. Although the redesigned version was introduced by Arkon in response to this lawsuit to replace the original hourglass shaped robust mounts, the redesigned products share the same product identifier numbers as their original counterparts. *Id*. In addition, NPI asserts that Arkon did not stop selling its originally designed robust mounts until an unspecified date in 2016, and only began selling the redesigned version after it ran through its inventory of originally designed robust mounts.[2] Dkt. 99, Ex. 3 (Hull Dep. Tr.) at 94:7-96:5. It is also undisputed that Arkon continued to use pictures of its original robust mount design with an hourglass shape to sell its redesigned products in some of its marketing materials well into 2016. Dkt. 98 at 8-9 (citing Dkt. 99, Exs. 13-36).[3]

Thus, NPI argues that Arkon not only infringed by distributing and selling the original hourglass-shaped robust mounts, but also by marketing and advertising the original hourglass-shaped mount in connection with the sales of the redesigned robust mounts. Dkt. 98 at 9. NPI believes it is entitled to all of Arkon's post-filing revenue disclosed in its financial

---

[2] At oral argument, Arkon disputed NPI's assertion that Arkon sold all the accused product inventory before launching the redesigned product. Instead, Arkon asserts that it enacted an "embargo" on the accused products.

[3] NPI further points out that in Mr. Young's rebuttal damages report analyzing "relevant products . . . sold from February 2014 to June 2016," Mr. Young did not opine that any portion of its 2016 sales for the robust mounts should be excluded based on the fact that some of the products were redesign products. Dkt. 99, Ex. 7 (Young Report).

spreadsheets, because all that revenue is derived from this infringing activity. *Id.* Finally, NPI points out that Arkon chose not to provide sales revenue data in a form that would permit the parties to exclude revenue from the redesigned products, on the grounds that it would be too difficult to pinpoint exactly when specific sales of a model of accused produced ceased and the redesigned version of that particular model began. *Id.* at 10.

Arkon contends that there is no law that supports NPI's argument that all sales during a period of allegedly infringing advertising, when some marketing materials that still displayed the original design were "in the pipeline," also constitute infringement and entitle NPI to all revenues from that period. Dkt. 108 at 8. Instead, Arkon asserts that NPI can object under Rule 37 at trial if Arkon attempts to introduce evidence it should have disclosed in discovery.

The Court agrees with Arkon, and declines to find that all the post-filing revenue in its financial spreadsheets are necessarily part of Arkon's gross profits attributable to its use of the hourglass shape. As discussed below with respect to Arkons' Motion *in Limine* No. 4, the Court finds that evidence of Arkon's redesigned products shall be excluded under Fed. R. Evid. 407 and 408 to avoid undue prejudicial to Arkon as a result of its remedial measures. Information about Arkon's redesigned products is not necessary to explain why certain sales in Arkon's sales reports should be excluded. Instead, the parties should have witnesses simply explain which invoices should be considered in this case. As the Court ruled at the conclusion of oral argument on the motions, the relevant time period for sales of the accused products in this case is between the **October 2, 2015** service date of the complaint and **April 30, 2016**.

**4. Motion to Exclude Evidence, Attorney Arguments or Reference to Arkon's Assertion that NPI's Federal Registration of the Hourglass Shape Trade Dress was Fraudulently Procured.**

GRANTED. NPI asks the Court to exclude evidence, attorney arguments or reference at trial to regarding Arkon's assertion that NPI's federal registration in its hourglass shape

trade dress was fraudulently procured. Dkt. 98 at 10. NPI asserts that this issue was summarily adjudicated in the Court's December 13, 2016 Order Granting In Part Defendant's Motion for Summary Judgment. Dkt. 74. Specifically, Judge Lasnik held that "[a]lthough defendant is certainly free to argue that the hourglass shape of plaintiff's mounts is generic, that the feature is functional or utilitarian, and that the shape has not acquired a secondary meaning, it has not, as a matter of law, overcome the contrary presumptions that the federal registration creates on these issues." *Id*. at 3-4. Indeed, Judge Lasnik found that "[n]o deception has been shown." *Id*. at 3.

Arkon argues that plaintiff has the burden of proving that its trade dress is non-functional and has acquired secondary meaning, and NPI intends to rely heavily on the presumption of validity accorded by its trademark registration. Dkt. 108 at 10. Arkon asserts that the presumption of validity "can be attacked, as the Court recognized in its order on Defendant's Motion for Summary Judgment[.]" Dkt. 108 at 10 (citing Dkt. 74 at 3). Arkon points out that by making the arguments invited by the Court, Arkon will necessarily be arguing that the USPTO wrongly granted U.S. Trademark Registration No. 4,25,4086. *Id*. Arkon asserts that "to do that, Defendant needs to be able to explain the problems and weaknesses of the evidence Plaintiff provided to the USPTO, particularly the consent judgment that was the major piece of evidence used to show secondary meaning." *Id*. at 10-11. Arkon wants to show evidence of the various versions of the consent judgment, and "explain[] the evidence the USPTO relied on and why that evidence is flawed[.]" *Id*. at 11. Arkon understands that it cannot use the term "fraud" or argue that NPI "fraudulently obtained" the trademark at issue. *Id.*

NPI's motion, which is very narrowly framed, is granted. Judge Lasnik has previously considered, and rejected, Arkon's argument that NPI's federal registration in its hourglass

shape trade dress was fraudulently procured.  Dkt. 74 at 3-4.  As a result, Arkon may not make such an argument at trial in this case.  However, Arkon may argue that the earlier versions of the consent judgment presented to Judge Pechman establish that the USPTO relied on flawed evidence.  In addition, some evidence related to the patent may be relevant to the issue of functionality and secondary meaning, and may be admissible for the purpose of arguing that the presumption of validity attached to the trademark registration should not apply in light of the patent filing.

> ### 5. Motion to Exclude Evidence, Attorney Arguments, or Reference Regarding NPI's Alleged Claiming of the Hourglass Shape During Prosecution of the '885 Patent Family.

DENIED.  NPI seeks to exclude evidence that the hourglass shape was claimed, or attempted to be claimed, in patent applications filed by NPI and Mr. Carnavali.  Dkt. 47 at 1, 7-10.  Arkon has previously argued that (1) certain "means-plus-function" elements in the U.S. Patent No. 5,845,885 ("the '885 patent") cover the hourglass shape, and (2) that "reduced diameter waist" language in claims that were submitted, then shortly thereafter cancelled, during prosecution of patents that reissued from the '885 patent cover the hourglass shape. NPI argues that "none of those elements in fact cover the shape," and therefore Arkon's arguments are irrelevant and will confuse the jurors who are unfamiliar with patent law.  Dkt. 98 at 12-13.  NPI is also concerned that jurors will not have the benefit of claim instructions to help them understand the claims at issue, as they would in a patent infringement case.  NPI asserts that the '885 patent family is irrelevant to the issues of functionality and whether NPI is attempting to wrongfully extend its patent term, and the reissue patents (and other applications and prosecution histories in the '885 patent family) are similarly irrelevant because they disclose no claim element that covers the hourglass shape. Thus, NPI asks the Court to exclude all evidence of claims in the '885 patent family (the claims in the '885 patent and in the

prosecution histories of the RE42,060 and RE43,806 patents), the Reissue Patents, the Design

Patent, and the '885 patent family prosecution histories, under Fed. R. Evid. 402.

Arkon asserts that NPI has four expired patents that show the alleged trade dress shape,

U.S. Patent Nos. 5,845,885, RE42,060, RE42,581, and RE43,806, which show the shape in

Figs. 1, 2, 3, and 8, and describe the shape as follows: "at the midsections of the arm sections

16 and 18, the faces 15 of the respective arm sections have reduced diameter waists 103 (FIG.

3)." Dkt. 111 (Karish Decl.), Ex. D at Figs. 1-3, 8, col. 10, lines 61-63. Arkon claims that

during the prosecution of these patents, the claim language tracked the specification language,

and there is evidence that the Examiner believed the shape was functional. Dkt. 108 at 13.

Dkt. 111 (Karish Decl.), Ex. E. With respect to the '885 patent, "the structure disclosed in the

written description for forming the opposing sockets is the structure and shape shown in Figs. 2

and 3 and described in the specification at col. 10, lines 44-51. This is the top and bottom

portions of plaintiff's trade dress shape." Dkt. 108 at 14. Thus, Arkon wishes to admit

evidence of plaintiff's prior patent claims covering the alleged trade dress to show

functionality, and counter NPI's argument that the hourglass shape of its goods is not

functional or essential to the use of the goods or claimed in NPI's patents. Dkt. 111 (Karish

Decl.), Ex. H.

NPI's motion to exclude evidence, attorney arguments or reference to the '885 patent

family is DENIED, and Arkon shall be permitted to admit evidence related to these patents and

claims during prosecution for the limited purpose of establishing functionality of the trade

dress shape. As the Supreme Court observed in *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,

> A utility patent is strong evidence that the features therein claimed are functional. If
> trade dress protection is sought for those features the strong evidence of functionality
> based on the previous patent adds great weight to the statutory presumption that
> features are deemed functional until proved otherwise by the party seeking trade
> dress protection. Where the expired patent claimed the features in question, one who

seeks to establish trade dress protection must carry the heavy burden of showing that the feature is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device.

…

In a case where a manufacturer seeks to protect arbitrary, incidental, or ornamental aspects of features of a product found in the patent claims, such as arbitrary curves in the legs or an ornamental pattern painted on the springs . . . the manufacturer could perhaps prove that those aspects do not serve a purpose within the terms of the utility patent. *The inquiry into whether such features, asserted to be trade dress, are functional by reason of their inclusion in the claims of an expired utility patent could be aided by going beyond the claims and examining the patent and its prosecution history to see if the feature in question is shown as a useful part of the invention.*

532 U.S. 23, 29-30, 34-35 (2001) (emphasis added).

Similarly, in this case, Arkon believes that NPI did, in fact, claim the hourglass shape of its goods in the patents and applications, despite its assertion to the contrary. Dkt. 111, Ex. H. It will therefore be necessary for Arkon to explain NPI's expired patents and claims during prosecution to articulate Arkon's theory of functionality of the trade dress shape. As a result, this evidence is relevant under Fed. R. Evid. 402, and shall not cause undue prejudice under Fed. R. Evid. 403. The Court is mindful that the jury is not versed in patent law, and that it will be necessary to provide instructions to help them understand the issues. In addition, NPI's motion during oral argument for leave to present testimony at trial from the attorney who prosecuted the '885 patent family is GRANTED.

### 6. Motion to Exclude Evidence, Attorney Arguments, or Reference Regarding Reviews on the Amazon or Glassdoor Websites.

GRANTED IN PART AND DENIED IN PART. NPI contends that the Court should exclude evidence, argument or reference during trial to (1) a printout of an Amazon.com webpage showing a review of the Arkon Universal Marine Electronic Fishfinder Mount made by NPI's CEO, Jeff Carnevali, and (2) a printout of a Glassdoor.com webpage showing various reviews of NPI as a workplace, including reviews made by Mr. Carnevali and by former and current NPI employees. Dkt. 99, Ex. 43-44. NPI asserts that Mr. Carnevali's negative

Amazon.com product reviews about Arkon products are "irrelevant evidence," and would be unduly prejudicial to NPI under Fed. R. Evid. 403 by inviting general hostility to NPI and Mr. Carnevali. Dkt. 98 at 15-16. With respect to the Glassdoor.com reviews, which include a positive review of NPI as a workplace by Mr. Carnevali and a number of negative reviews of NPI by alleged current or former employees, NPI contends that these reviews are not relevant to any issue in this case. *Id*. at 17.

Arkon responds that the negative Amazon.com reviews of Arkon products posted anonymously by Mr. Carnevali are relevant to showing no likelihood of confusion, as well as Mr. Carnevali's credibility as a witness and NPI's alleged reputation. Example, Mr. Carnevali described an Arkon product as a "Cheap import copy of a genuine USA made RAM Mount." Dkt. 109, Ex. I. Mr. Carnevali testified that he posted such negative reviews to avoid confusion in the marketplace. Dkt. 109, Ex. F (Carnevali Dep.) at 147:21-148:17. Thus, Arkon asserts that Mr. Carnevali's Amazon.com reviews are evidence that his postings were successful in helping to avoid any confusion between NPI and Arkon products. Dkt. 108 at 16. Arkon does not articulate a similarly strong argument for admitting the evidence from Glassdoor.com, however. Arkon simply asserts that if Mr. Carnevali will likely testify regarding "the history and reputation of NPI," and therefore Mr. Carnevali's statements on Glassdoor.com are relevant to his veracity on this point. Dkt. 99, Ex. K.

NPI's motion to exclude Mr. Carnevali's negative reviews regarding Arkon products on Amazon.com is DENIED. As alleged by Arkon, Mr. Carnevali's public statements regarding the quality of Arkon products, and the distinction between Arkon and RAM products, is relevant to the issue of marketplace confusion. Arkon shall redact the product drawings from the exhibit to avoid any confusion regarding which version of the products Mr. Carnevali was referring to when he posted his review on January 8, 2016. Dkt. 111, Ex. I. By contrast, the

Court agrees with NPI that negative or positive reviews of NPI as a work environment, or Mr. Carnevali as an employer, are not relevant to the issues in this case and shall be excluded under Fed. R. Evid. 403. NPI's motion to exclude the Glassdoor.com reviews is GRANTED.

**7. Motion to Exclude Evidence, Attorney Arguments, or Reference that the Hourglass Trade Dress is Generic Based on Patent Drawings Which Arkon Has Not Shown to Have Commercial Embodiments and/or Mounts Unrelated to the Design of a Double-Socket Mount Arm.**

DENIED. At the summary judgment stage, Arkon previously identified four third-party patents and two Arkon products (unrelated to the double-socket mount arm identified in the hourglass shape registration) to argue that NPI's hourglass shape is generic because the designs in the drawings and Arkon products all have "arguably hourglass shaped components" and are "tapered in the middle." *See Walker & Zanger, Inc. v. Paragon Indus., Inc*. 549 F. Supp. 2d 1168, 1174 (N.D. Cal. 2007) ("Genericness covers three situations: (1) if the definition of a product design is overbroad or too generalized; (2) if a product design is the basic form of a type of product; or (3) if the product design is so common in the industry that it cannot be said to identify a particular source."). NPI asserts that this evidence is not relevant, and would mislead the jury to apply the wrong legal standard because "Arkon's patent drawings are not commercial products, and thus they have no bearing on whether NPI's trade dress is generic." Dkt. 98 at 17. NPI asserts that these images "do not have the design covered by NPI's trade dress," and therefore cannot be used to show genericness and should be excluded as irrelevant under Fed. R. Evid. 402. Dkt. 98 at 18. NPI is concerned that this evidence will be used to incorrectly suggest that genericness depends on the label of the design, rather than the design itself, *i.e*., that any tapering in the middle can be said to have an "hourglass shape." *Id*. However, the question is not whether the products and the trade dress

can both be labeled as bearing an "hourglass shape," but requires comparing the actual design of the product to that of the trade dress.  *Id.*

Arkon responds that the third party patents and other Arkon products are highly relevant, and plaintiff has not demonstrated likely confusion or prejudice that warrants their exclusion.  Dkt. 108 at 19.  For example, during his deposition, Arkon asserts that Mr. Carnevali did not appear to be sure of what was meant by the phrase "hourglass shape."  Dkt. 108 at 18.  Moreover, the Arkon products at issue, which are not the accused products, are likely to be seen in the same searches conducted by potential purchasers and therefore are relevant to whether plaintiff's alleged trade dress shape is generic. Arkon contends that Mr. Carnevali's uncertainty as to whether those third party patents or products had an "hourglass shape" or infringed the alleged trade dress is relevant to show that plaintiff's trade dress shape "is so common in the industry that it cannot be said to identify a particular source."  *Id.*  In addition, Arkon asserts that the presence of plaintiff's alleged trade dress shape in several other patents directed to double socket mount arms is relevant to defendant's argument that plaintiff's trade dress is functional.  *Id.*

NPI's motion is DENIED.  Arkon may introduce evidence and argument utilizing the third-party patent drawings and several of Arkon's non-accused products in an attempt to argue that  NPI's trade dress is not distinctive.  This evidence is illustrative in nature, and relevant to support Arkon's argument that plaintiff's trade dress shape is so common in the industry that it cannot be said to identify a particular source.

II.     DEFENDANT'S MOTIONS IN LIMINE

**1.  Motion to Exclude the Expert Report and Testimony of Dr. Carl Obermiller.**

GRANTED.  Arkon contends that the expert report and testimony of Carl Obermiller, Ph.D., who opines as to the issues of likelihood of confusion and secondary meaning, should be excluded under Fed. R. Evid. 702 because it is conclusory in nature and contains no explanation of a reliable method.  Dkt. 92 at 2.  Specifically, Arkon argues that likelihood of confusion is generally not a proper topic for expert testimony because it usurps the role of the jury, and that Dr. Obermiller's analysis on this topic in this case ignores the relevant law (the *Sleekcraft* factors) entirely.  *Id*. at 4.  With respect to the issue of whether the hourglass shape is distinctive and has acquired secondary meaning, Arkon contends that Dr. Obermiller's conclusions appear to be based only upon his "understanding of the products and their history and the relevant markets, relevant marketing principles and my general understanding of the legal standards." Dkt. 57 Ex. A at ¶ 10.  Arkon asserts that Dr. Obermiller's "empirical data" report contains facts as alleged by NPI, without empirical evidence or survey results, rendering them unhelpful to the trier of fact.  Dkt. 92 at 4-5.  Moreover, Arkon contends that Dr. Obermiller is not qualified as an expert witness on likelihood of confusion or secondary meaning, because he has no training in trademark law, as evinced by his incomplete discussion of the legal standard in his expert report, and he has no specific experience in the relevant industry of holders for electronic devices.  Dkt. 92 at 5-6.  Finally, Arkon contends that if the Court considers the final three factors under Rule 702, Dr. Obermiller's testimony should be excluded because it is unsupported by independent facts, was not supported by any reliable principle or methodology, and his "results" were simply conclusory.  *Id*. at 6.

NPI responds that Dr. Obermiller's opinion is helpful to a jury to understand key facts and concepts underlying issues in this case, including how secondary meaning is achieved

among consumers through association of a good or service with a mark (including shapes) and

for issues related to the likelihood of confusion. Dkt. 110 at 6. NPI asserts that there is no

requirement that experts in trademark cases rely on survey evidence, possess trademark law

expertise or experience in specific industries, or use unambiguous methods. *Id.* NPI contends

that Dr. Obermiller's expertise, which focuses on consumer decision-making, is relevant and

will be helpful to the jury.

Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony

in federal court:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the
> trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the
> case.

Fed. R. Evid. 702.

"Rule 702 . . . require[s] that '[e]xpert testimony . . . be both relevant and reliable.'"

*Estate of Henry Barbain v. Astenjohnson, Inc.,* 740 F.3d 457, 463 (9th Cir. 2014) (quoting

(*United States v. Vallejo,* 237 F.3d 1008, 1019 (9th Cir. 2001)). "Relevancy simply requires

that '[t]he evidence . . . logically advance a material aspect of the party's case." *Id.* (quoting

*Cooper v. Brown,* 510 F.3d 870, 942 (9th Cir. 2007)). Reliability requires the court to assess

"whether an expert's testimony has 'a reliable basis in the knowledge and experience of the

relevant discipline.'" *Id.* (quoting *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 149, 119

S.Ct. 1167, 143 L.Ed.2d 238 (1999) (citation and alterations omitted)). The court is concerned

not with the correctness of the expert's conclusions, but the soundness of the methodology. *Id.*

The court must act as a gate keeper to exclude "junk science" that does not meet Rule 702's

reliability standards. *Id.* (quoting *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 982 (9th Cir. 2011)).

The Supreme Court has clarified that the reliability standard is "a flexible one." *Kumho Tire,* 526 U.S. at 150. The Court has suggested several factors that can be used to determine reliability: (1) whether a theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the theory or technique; and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community. *Estate of Henry Barbain,* 740 F.3d at 463 (citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592–94, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). However, whether these specific factors are "reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* (citing *Kumho Tire,* 526 U.S. at 153).

Here, the Court finds that Dr. Obermiller's expert report falls woefully short of the standards set forth in Rule 702. Although Dr. Obermiller's expertise in marketing and consumer behavior could theoretically qualify him to render an opinion as to the evidence in this case, the Court is hard pressed to find that his opinion "is based on sufficient facts and data," or "the product of reliable principles and methods," and that "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a), (b), (c), (d). Rather, Dr. Obermiller's opinions regarding the existence of secondary meaning (which goes to the validity of the trade dress) as well as the ultimate question of likelihood of confusion, are conclusory, vague, and therefore not reliable or helpful to the jury.

Significantly, Dr. Obermiller did not employ any clear methodology – reliable or otherwise – to reach his conclusions. He noted his understanding that "long-standing use of a trademark, including a shape, creates a statutory presumption of secondary meaning and that

secondary meaning can be established by the exclusive use, sales and marketing of a consistent shape over time." Dkt. 57-1 at 14. He discussed the origins of NPI's hourglass shaped RAM mounts, and noted that "the Hourglass Shape has been a consistent feature of NPI's advertising and product presentation through the company's history." *Id.* at 16. Dr. Obermiller noted that "NPI has sold approximately 14 million Hourglass Shaped mounts under the RAM name since the product was introduced." *Id.* Based upon the success of the product during the life of the utility patent, Dr. Obermiller opined that "NPI's consistent and virtually exclusive use of the Hourglass Shape in RAM Mounts for over twenty years has established a recognizable and distinctive brand element for RAM's double ball and socket mounts. Applying the legal framework . . . I understand that this means that the Hourglass Shape has 'secondary meaning.'" *Id.* at 19.

The problem with Dr. Obermiller's opinion is that he failed to gather survey or other empirical evidence, or utilize any clear methodology, to determine that secondary meaning had been established. Instead, he simply relied upon the consistent use the hourglass shape during the life of the valid utility patent, and concluded that the success of the product during that time established secondary meaning. Indeed, it is not at all surprising that the plaintiff's mounts were successful for twenty years. These devices were protected by a utility patent which has now expired. This success, without some connection to the trade dress at issue, establishes nothing. As Dr. Obermiller failed to acknowledge the factors to be considered in determining whether secondary meaning has been achieved, his opinion oversimplifies and misstates the relevant law, and would not be helpful to the jury.[4] He also failed to focus on the specific trade

---

[4] The Ninth Circuit defines "secondary meaning" as "the mental association by a substantial segment of consumers and potential consumers 'between the alleged mark and a single source of the product.'" *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1354 (9th Cir. 1985). Some of the factors to be considered in determining whether secondary meaning

dress claimed, and whether the trade dress was actually marketed or recognized as a non-functional source designator.

Similarly, Dr. Obermiller concludes that because Arkon incorporated an hourglass shape into its competing products, Arkon has attempted to appropriate the value of NPI's hourglass shape "in a way that is likely to confuse customers and prospective customers of double ball and socket mounts." Dkt. 57-1 at 7. Thus, Dr. Obermiller concluded, based solely upon the similarity between the products' hourglass shapes, that "Arkon's ball and socket mounts are confusingly similar to NPI's Hourglass Shaped RAM mounts." *Id.* at 19. Again, Dr. Obermiller fails to acknowledge that a determination of whether there is likelihood of confusion is a more nuanced legal inquiry, and he fails to discuss the multi-factor test (the *Sleekcraft* factors) used to determine whether there is a likelihood of confusion. His opinion offers conclusions, unsupported by reliable methodology, on the ultimate questions to be decided by the jury in this case.

As discussed above, the Court functions as a gatekeeper to ensure that expert testimony admitted at trial is not only relevant, but reliable. The Court cannot conclude that Dr. Obermiller's methodology is sound, or based on an accurate statement of the law. As a result, the Court cannot conclude that he "reliably appl[ied] the principles and methods to the facts of the case." Fed. R. Evid. 702. His expert report and testimony shall be excluded.

## 2. Motion to Exclude the Expert Report and Testimony of James Babcock.

DENIED. Arkon alleges that NPI's expert witness James Babcock should not be

---

has been achieved include: (1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer; (2) the degree and manner of advertising under the claimed trademark; (3) the length and manner of use of the claimed trademark; (4) whether use of the claimed trademark has been exclusive; (5) evidence of sales, advertising, and promotional activities; (6) unsolicited media coverage of the product; and (7) attempts to plagiarize the mark. *See First Brands Corp. v. Fred Meyer, Inc.,* 809 F.2d 1378, 1383 (9th Cir. 1987); *Levi Strauss,* 778 F.2d at 1358.

permitted to testify regarding non-functionality of the trade dress because although Mr. Babcock mentions the '885 patent in his report, he fails to mention the three related reissue patents. Dkt. 92 at 11. Arkon alleges that two of the reissue patents had claims specifically directed to the alleged trade dress, and that the Examiner thought the shape was functional. *Id.* Arkon asserts that Mr. Babcock ignores this evidence of functionality created by the expired patents, and it is not even clear whether he is aware that his client claimed the narrow midsection in a patent. As a result, Arkon asserts that his testimony should be excluded for failing to rely on adequate facts, and failing to obtain a result based upon reliable application of facts to method. *Id.* at 12. Finally, Arkon asserts that Mr. Babcock misstates the legal standard for functionality. *Id.*

NPI asserts that Mr. Babcock, a mechanical engineer with more than thirty years of product design experience, has analyzed the hourglass shaped arm and performed stress tests and analyzed the arm applying different engineering criteria. Dkt. 110 at 14. Mr. Babcock concluded that the shape is not only non-functional, but it results in a weaker design at a higher cost to manufacture than if the mount arm were not tapered. NPI asserts that his testimony satisfies Fed. R. Evid. 702, and will be helpful to the jury to determine whether the hourglass shape is functional or not.

The Court finds that Arkon has not identified any basis for the Court to exclude his testimony under Fed. R. Evid. 702. The parties disagree as to whether the trade dress is actually claimed in the '885 patent or the prosecutions of the reissue patents, and the jury will need to resolve this issue. Arkon's concerns regarding Mr. Babcock's expert report and analysis, such as his failure to discuss the reissue patents that Arkon asserts had claims specifically directed to the alleged trade dress, provide fertile ground for Arkon cross-examination of Mr. Babcock at trial. Arkon also does not assert that Mr. Babcock's opinion

was unreliable because it was based on principles and techniques that are not accepted in the mechanical engineering field, or that he utilized improper scientific methodology or testing.[5] The Court also finds that his testimony is relevant and will be helpful to the jury because his technical opinion is directed to a key issue the jury shall determine at trial – functionality.

Accordingly, James Babcock may offer expert testimony on the issue of functionality, including whether the hourglass shape provides a functional benefit to the device, as well as whether Arkon products have an hourglass shape. Similarly, Arkon may cross-examine Mr. Babcock on issues of functionality, including whether the alleged trade dress was disclosed in NPI's patent applications.

### 3. Motion to Exclude the Testimony of Drew Voth as to Anything Other Than Arkon's Profits from the Accused Activity.

GRANTED. Arkon alleges that plaintiff's damages expert, Drew Voth, should be prohibited from providing any evidence or testimony concerning any alleged measure of damages other than Arkon's profits. Arkon quotes Mr. Voth's opinion in his report that "[i]n the event that Arkon is found liable for damages in this matter, I have calculated damages as Arkon's profits from the accused activity." Arkon contends that because Mr. Voth provides no other basis for calculating damages, he should not now be allowed to opine on any other measure of damages including, without limitation, reasonable royalty, plaintiff's lost profits or punitive damages.

Mr. Voth may testify at trial concerning the contents of his expert report. Fed. R. Civ. P. 26(a)(2)(B)(i) provides that expert reports must contain "a complete statement of all

---

[5] The sole exception is Arkon's contention that Mr. Babcock's use of "solid" components in the stress and defraction analysis was problematic, and rendered his test unreliable. Dkt. 92 at 13. Without more, this conclusory assertion is not sufficient evidence to establish that Mr. Babcock's methodology and testing conditions were unreliable. Arkon may cross-examine Mr. Babcock regarding his methodology at trial.

opinions the witness will express and the basis and reasons for them." Although NPI contends that "Mr. Voth should be able to respond to certain issues and facts presented outside his report – including opinions and testimony offered by Mr. Young who issued his report after Mr. Voth," Mr. Young's testimony has been excluded and does not provide any justification for Mr. Voth testifying beyond the bounds of his own report. Dkt. 110 at 18. Accordingly, Mr. Voth's testimony will be limited to the subject matter and theories presented in his report, and he shall not testify regarding any alleged measure of damages other than Arkon's profits.

### 4. Motion to Exclude Evidence of Arkon's Redesigned Products or Alternative Redesigns.

GRANTED. Arkon contends that evidence relating to subsequent remedial measures is inadmissible pursuant to Fed. R. Evid. 407 and 408. Rule 407 provides that a court may admit evidence of subsequent remedial measures if this evidence is used for purposes other than proving negligence, culpable conduct, design defects, or a need for a warning or instruction. Rule 408 provides that compromise offers and negotiations between parties are generally not admissible, subject to limited exceptions. Arkon is concerned that evidence that it redesigned its accused products after the start of this lawsuit to try to resolve this dispute will be prejudicial to Arkon, and asserts that such evidence is irrelevant in this matter because such evidence is not admissible to prove secondary meaning. Specifically, the Ninth Circuit in *Fuddruckers* explained that the time for assessing secondary meaning is when the alleged infringement began. *See Fuddruckers, Inc. v. Doc's B.R. Others, Inc*., 826 F.2d 837, 844 (9th Cir. 1987) ("the court instructed the jury that for its trade dress to be protectable, Fuddruckers had to prove that it had secondary meaning in the Phoenix area at the time Doc's opened. The jury found that it did not."). Thus, Arkon contends that the relevance, if any, of whether plaintiff's alleged trade dress had secondary meaning nearly two years later, when the

redesigned product was introduced, was substantially outweighed by the extreme prejudice to Arkon of revealing its subsequent remedial measures.

NPI responds that the redesigned products are relevant to multiple issues in this case, and that its introduction is permissible under Fed. R. Evid. 407 because it is not being used to show infringement – but rather to show availability of alternative products. Dkt. 110 at 19. NPI asserts that Judge Lasnik previously found that the redesigned products are relevant to secondary meaning. Dkt. 68 at 2. NPI argues that they are also relevant to rebut Arkon's claims of functionality and genericness, because one of the factors considered by the Ninth Circuit is the availability of commercially feasible alternative designs. *Disc Golf Ass'n, Inc. v, Champion Discs, Inc*., 158 F.3d 1002, 1006 (9th Cir. 1998). NPI asserts that the fact that Arkon is now selling a straight-sided mount arm as a replacement to its accused products bearing the hourglass shape trade dress shows that alternative designs to the hourglass shape were both available and commercially feasible. In support of genericness, Arkon has argued that "most mount products have some taper or shape on mount arms between a base and a device holder." Dkt. 47 at 7. NPI asserts that the redesigned products, which are not tapered in the middle, works against this assertion. Finally, NPI asserts that evidence of the redesign is necessary for Arkon to explain why certain sales in Arkon's sales reports for the accused products should be excluded, as explained in Motion *in Limine* No. 3, because the redesigned products use the same product numbers corresponding to the accused products they replaced.

As a threshold matter, the Court denied NPI's Motion *in Limine* No. 3. Information about Arkon's redesigned products is not necessary to explain why certain sales in Arkon's sales reports should not be considered by the jury. Arkon can have a witness explain which invoices between the October 2, 2015 service date of the complaint and April 30, 2016 cover

the accused products, without introducing evidence of the redesigned products simply to help the jury understand the invoices.

The Court finds that the evidence of the redesign can be excluded under Rule 407 and Rule 408, unless Arkon opens the door for such evidence by arguing that there was no commercially feasible alternative design. The Court is not persuaded that the evidence of the remedial measures is necessary to rebut a claim of genericness, as indeed, every redesigned product would conceivably be admissible for this purpose. Judge Lasnik previously allowed discovery related to Arkon's redesigned product, although he noted "it is undisputed that the mount arms of the redesigned products do not taper in the middle" and therefore "they are not . . . accused in this litigation[.]" Dkt. 68 at 1-2. He further acknowledged NPI's argument that the redesign intentionally incorporates an hourglass feature through markings (as opposed to physical shape), and that NPI believed such copying "is evidence that the mark has acquired secondary meaning." *Id*. at 2 (citing *Fuddruckers*, 826 F.2d at 844). Judge Lasnik's acknowledgement of NPI's argument and allowance of further discovery as to the redesigned products, however, did not establish that evidence of the redesign was necessarily *admissible* to establish secondary meaning as to the accused products. NPI has cited two cases from other jurisdictions to show that when evidence of redesigned products are used for purposes other than to show infringement, such evidence does not violate Fed. R. Evid. 407. Dkt. 110 at 19 (citing *Robertson Transformer Co. v. Gen Elec. Co.*, No. 1-12-cv-08094 (N.D. Ill. Aug. 19, 2016) (Dkt. 538 at 18-19) (crediting parties' agreement regarding the "admissibility of evidence of Super X's redesign for other purposes, including on the damages-related issue of the availability of non-infringing alternatives"); *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1221 (Fed. Cir. 1995) ("[T]he redesigned product] was not relied on as evidence of culpability for the prior infringement by [the original product] . . . Thus by its terms Rule 407

was not violated.").  However, neither party has cited any case, and the Court is aware of none, in which evidence of a subsequent redesign was allowed to show secondary meaning of an original design.

The Advisory Committee Notes to Rule 407 provide that "the court may admit evidence if offered for a permissible purpose . . . It remains the case that if offered for an impermissible purpose, it must be excluded, and if offered for a purpose not barred by the Rule, its admissibility remains governed by the general principles of Rules 402, 403, 801, etc." The Notes further provide that "evidence of subsequent measures that is not barred by Rule 407 may still be subject to exclusion on Rule 403 grounds when the dangers of prejudice or confusion substantially outweigh the probative value of the evidence."  Here, the Court finds that the risk that the jury will interpret the redesign as an admission of culpability, coupled with NPI's failure to articulate a sound reason why evidence of the redesign must be admitted, weighs against admission of this evidence.

Accordingly, all evidence, attorney arguments or reference to Arkon's redesigned products shall be excluded, unless Arkon opens the door for the admission of such evidence by arguing that alternative designs were not feasible.  To conclude otherwise would potentially expose Arkon to undue prejudice as a result of its remedial measures under Fed. R. Evid. 403, 407, and 408.

### 5.  Motion to Exclude Financial Information about Sales of the Accused Products Prior to the October 2, 2015 Service Date of the Complaint.

GRANTED.  The Court has repeatedly held that NPI is not entitled to profits or statutory damages prior to service of the complaint because NPI failed to prominently display with its trade dress an ® or a variant of the words "Registered in U.S. Patent and Trademark Office," and there is no evidence that Arkon was aware that NPI had a registered mark before

it was served with the complaint in this matter on October 2, 2015. Dkt. 74; 15 U.S.C. § 1111. As a result, the financial implications of sales executed prior to the service date are irrelevant, as NPI is not entitled to recover profits or damages relating to them. Moreover, the jury could become confused by a higher number of total gross and net sales.

NPI's contention that sales of Arkon's accused products prior to the October 2, 2015 service date of the complaint must be admissible because they are "highly relevant to core issues to be resolved at trial" and relate to several of the *Sleekcraft* factors is unpersuasive. Similarly, plaintiff fails to cite any case establishing that damages and profits for pre-service date sales are recoverable for NPI's Washington Consumer Protection Act claims, although statutory damages or profits are not available for federal trademark infringement under 15 U.S.C. § 1117(a). Although NPI is correct that Judge Lasnik did not explicitly discuss NPI's state law claims in his December 13, 2016 Order, which held that statutory damages and profits are not available for such pre-service date sales due to Arkon's lack of actual notice of the registration, Judge Lasnik's sound reasoning is equally applicable to NPI's rights under state law. Dkt. 74 at 5-7. To rule otherwise could result in substantial confusion for the jury regarding the available damages and profits. Moreover, NPI had an opportunity to promptly raise this issue in its motion for reconsideration to Judge Lasnik, Dkt. 76, but elected instead to wait until the eve of trial.

Finally, NPI should no longer be concerned that Arkon will be allowed to rely on pre-October 2015 "weighted" costs of goods sold and overhead figures to calculate post-October 2015 profits, but then exclude NPI from examining Arkon witnesses and damages expert on this point. The Court has ruled that Arkon's damages expert may not testify. Accordingly, financial information about the sales of Arkon's accused products prior to the service date of the complaint is not admissible.

**6. Motion to Exclude Evidence to Counter the Presumption of Functionality Created by Claims in Plaintiff's Patent Applications.**

DENIED. Arkon contends that NPI should be barred from presenting evidence to counter the presumption of functionality created by claims in plaintiff's expired utility patent applications which illustrated, described, and the claimed the shape at issue in this case. Dkt. 92 at 17. Specifically, Arkon asserts that because NPI refused to provide any information or witness to testify about its expired Patent Nos. RE42,060, RE42,581, and RE43,806, all of which are relevant to the presumption that plaintiff's trade dress shape is functional, the Court should prohibit NPI from presenting any evidence that the alleged trade dress shape is non-functional. Dkt. 92 at 17-18. Arkon contends that the following statement from the U.S. Supreme Court decision in *TrafFix Devices, Inc. v. Mktg. Displays, Inc*., is applicable in this case:

> A utility patent is strong evidence that the features therein claimed are functional. If trade dress protection is sought for those features the strong evidence *of functionality based on the previous patent adds great weight to the statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection. Where the expired patent claimed the features in question, one who seeks to establish trade dress protection must carry the heavy burden of showing that the feature is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device.

532 U.S. 23, 29-30 (2001).

NPI responds that the Court should reject Arkon's argument, because there is no "presumption of functionality" created by the existence of patents. NPI argues that because the hourglass shape was not, in fact, claimed during the prosecution of the '885 patent family, there is no presumption of functionality, and evidence of such patents and their prosecution histories is irrelevant to the functionality issue. NPI points out that Judge Lasnik previously found that Arkon should have been more diligent in identifying and requesting documents from NPI related to the reissue patents, especially because such patents and their prosecution

histories are publicly available.  Dkt. 69 at 7.  NPI also asserts that NPI's President and CEO,

Jeffrey Carnevali, testified regarding the reissue patents at his 30(b)(6) deposition.  Dkt. 110 at

22. Thus, NPI asserts that it did produce documents and deposition testimony related to this

subject matter, and Arkon should be precluded from referencing this discovery dispute during

the trial.  *Id*. at 23.

     Arkon's motion is denied.  NPI correctly points out that Judge Lasnik previously found

that Arkon was not justified in asserting that NPI acted improperly during discovery regarding

the reissue patents.  Dkt. 69 at 6-7.  Instead, the Judge Lasnik concluded that "the patent

prosecution documents upon which defendant relies are publicly available, and defendant

should have been more diligent in its investigation." *Id*. at 7.  The Court sees no reason to

disturb this finding.  Just as Arkon is permitted to introduce evidence of the reissue patents at

trial to argue that they are strong evidence that the trade dress shape are functional, NPI may

present evidence (including testimony from the attorney who prosecuted the patents) that the

alleged trade dress shape is non-functional.

### III.    CONCLUSION

     For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the

parties' motions *in limine*.  Dkt. 92; Dkt. 98.  The parties shall submit the additional proposed

jury instructions relating to understanding the patent claims in the '885 patent family by no

later than **noon on Tuesday, November 28, 2017**.

     DATED this 16th day of November, 2017.

*James P. Donohue*

        JAMES P. DONOHUE
        Chief United States Magistrate Judge