1
2
3
4
5
6            UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
7                     AT SEATTLE

8   NATIONAL PRODUCTS, INC.,              NO.  C15-1553-JPD

9                    Plaintiff,

10       v.                               ORDER ON THE PARTIES' POST-
                                          TRIAL MOTIONS
11  ARKON RESOURCES, INC.,

12                   Defendant.

13

14          I.       INTRODUCTION AND SUMMARY CONCLUSION

15          This matter comes before the Court on several post-trial motions filed by both parties,

16  plaintiff National Products, Inc. ("NPI") and defendant Arkon Resources, Inc. ("Arkon"),

17  following a five-day jury trial for trade dress infringement.  Dkts. 182, 186, 188, 190, 196.  The

18  Court, having considered the parties' motions, all submissions filed in support of and

19  opposition to the motions, the governing law, and the balance of the record, hereby ORDERS

20  as follows: NPI's renewed Rule 50(b) motion for judgment as a matter of law that Arkon

21  violated the Washington Consumer Protection Act (Dkt. 182) is DENIED; Arkon's unopposed

22  motion to seal several exhibits (Dkt. 188) is GRANTED; Arkon's renewed Rule 50(b) motion

23  for judgment as a matter of law (Dkt. 186) is DENIED; Arkon's motion for a new trial as to

24  damages or remittitur (Dkt. 190) is DENIED, conditional upon NPI accepting a remittitur

ORDER - 1

reducing the damages award from $193,598 to $167,239.55; and Arkon's motion to alter or amend the judgment (Dkt. 196) is DENIED.

## II.     DISCUSSION

### A.     NPI's Renewed Motion under Rule 50(b) for Judgment as a Matter of Law that Arkon Violated the Washington Consumer Protection Act

#### 1.  Background

The Court conducted a jury trial in this matter from December 4, 2017 to December 8, 2017, on NPI's claims against Arkon for infringement of NPI's federally registered trademark[1] in violation of the Lanham Act, 15 U.S.C. § 1114(1), as well as the Washington Consumer Protection Act ("WCPA").  NPI's trade dress is the hourglass shaped design of a mounting arm, which is used to attach a cell phone (or similar device) to a base in the interior of a vehicle.  Arkon denied NPI's claims, arguing that NPI's trade dress was invalid as functional, as lacking secondary meaning, and as generic.  Alternatively, if the jury found that NPI's trade dress was valid, Arkon argued that there was no infringement.

On December 8, 2017, the jury returned a verdict in NPI's favor on its trade dress infringement claim, finding that NPI's trade dress was valid, and infringed, and that the infringement was "deliberate or willful."  However, the jury found in favor of Arkon on NPI's WCPA claim.  The jury awarded NPI money damages in the amount of $193,598.  Dkt. 177 (jury verdict).  The Court entered judgment on December 11, 2017.  Dkt. 179.

During the trial, NPI moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a)(1) that Arkon had infringed NPI's hourglass shape trade dress, that this infringement was

---

[1] The trademark at issue, U.S. Trademark Reg. No. 4,254,086, covers "THE MARK CONSIST[ING] OF A THREE DIMENSIONAL CONFIGURATION OF A DOUBLE-SOCKET MOUNT ARM THAT IS TAPERED IN THE MIDDLE LIKE AN HOURGLASS." Trial Ex. 1 (U.S. Trademark Reg. No. 4,254,086).  The Court will refer to this trademark as the trade dress, or the "hourglass shape trade dress," in the balance of this opinion.

willful, and that Arkon's conduct violated the WCPA. Dkt. 169. NPI argued that the infringement took place in Washington, and that Arkon's conduct automatically satisfied four of the five elements necessary to establish a violation of the WCPA pursuant to *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780, 719 P.2d 531 (1986). With respect to the fifth and final element of the *Hangman Ridge* test, NPI argued that Arkon has not presented evidence of "usual or unforeseen circumstances" as required to show that the infringement did not satisfy the remaining "public interest" prong of the *Hangman Ridge* test. The Court denied NPI's Rule 50(a) motion on the record on December 7, 2017. Dkt. 170; Dkt. 195 (Karish Decl.), Ex. A (Trial Tr. 12/07/17).

Following the jury's verdict, NPI timely filed the instant renewed motion for judgment as a matter of law under Fed. R. Civ. P. 50(b). Dkt. 182. NPI argues that although the jury found in favor of Arkon on NPI's WCPA claim, Dkt. 177, this finding is incorrect as a matter of law because Washington law mandates that trademark infringement is a violation of the WCPA absent evidence of "unforeseen or unusual circumstances." *See Nordstrom, Inc. v. Tampoulos*, 107 Wash.2d 735, 740-42, 733 P.2d 208 (1987). NPI asserts that there was no evidence of "unforeseen or unusual circumstances" presented at trial, and the jury's finding that Arkon's infringement was willful establishes that it was of the kind that necessarily establishes a violation of the WCPA. Dkt. 182. Arkon responds that a finding of trademark infringement does not mandate a finding that the WCPA has been violated, and therefore the Court should not disturb the jury's reasonable finding as to NPI's WCPA claim. Dkt. 194.

### 2. *Legal Standard for Rule 50(b) Motions*

The Court may grant NPI's renewed motion for judgment as a matter of law on its WCPA claim if it "finds that a reasonable jury would not have a legally sufficient evidentiary basis" to find for Arkon on this claim. *See* Fed. R. Civ. P. 50(a). The Court must view the

evidence and draw all reasonable inferences in favor of the nonmoving party, Arkon, in whose favor the jury returned its verdict on this claim. *Ostad v. Oregon Health Sci. Univ.,* 327 F.3d 876, 881 (9th Cir. 2003). The jury's verdict is upheld if substantial evidence supports the jury's conclusion, even if a contrary conclusion could have been reached. *Harris v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008). Granting a motion for judgment as a matter of law is proper if "the evidence permits only one reasonable conclusion, and the conclusion is contrary to that reached by the jury." *Id.* Judgment as a matter of law "is appropriate when the jury could have relied only on speculation to reach its verdict." *Lakeside–Scott v. Multnomah Cnty.,* 556 F.3d 797, 802–03 (9th Cir. 2009).

A proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion. *EEOC v. GoDaddy Software, Inc.,* 581 F.3d 951, 961–62 (9th Cir. 2009). Thus, a party cannot properly raise arguments in its post-trial motion under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion. *Id.* (citing *Freund v. Nycomed Amersham,* 347 F.3d 752, 761 (9th Cir. 2003)).

### 3. NPI's Washington Consumer Protection Act Claim

The Washington Consumer Protection Act, or WCPA, provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020. The Washington Supreme Court has held that a plaintiff bears the burden of proving the following elements to establish a violation of the WCPA: (1) an unfair or deceptive practice; (2) occurring in trade or commerce; (3) affecting the public interest; (4) that injures the plaintiff in his or her business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 105 Wash.2d 778, 719 P.2d 531, 535-39 (1986). *See also Nordstrom, Inc.,* 107 Wash.2d at 739.

This Court has stated on numerous occasions that federal claims under the Lanham Act and state claims under the WCPA are "substantially congruous," and "the elements necessary to establish a likelihood of confusion for . . . statutory unfair competition claims in Washington are the same as for federal trademark infringement and unfair competition." *Safeworks, LLC v. Teupen Am.*, LLC, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010) ("The elements necessary to establish a likelihood of confusion for common law and statutory unfair competition claims in Washington are the same as for federal trademark infringement and unfair competition."). However, in recent years this Court has been more careful to acknowledge the Washington Supreme Court's holding that these elements are not necessarily "the same," and that there will be exceptional circumstances where a party's conduct constitutes trademark infringement, but not necessarily deceptive or unfair competition under the WCPA.

In *Nordstrom v. Tampourlos*, the Washington Supreme Court stated that typically such "confusion of the public [resulting from trade name infringement], *absent some unusual or unforeseen circumstances*, will be sufficient to meet the public interest requirement of the Consumer Protection Act. This is not a per se rule, but rather a function of what we perceive as the overlapping nature of proof in both trade name infringement cases and Consumer Protection Act violations." *Nordstrom*, 107 Wash.2d at 743. In *Seattle Endeavors, Inc. v. Mastro*, the Washington Supreme Court concluded that because the mark at issue was weak and the infringement was inadvertent, the plaintiff in that case had failed to establish the elements of a WCPA claim. 12 Wash.2d 339, 350-51, 868 P.2d 120 (1994). Thus, the Washington Supreme Court's holding in *Seattle Endeavors* reaffirms that trademark infringement does not constitute a per se violation of the WCPA.

In *Experience Hendrix L.L.C. v. HendrixLicensing.com, Ltd.*, this Court denied a motion for summary judgment on a WCPA claim, despite granting summary judgment on a

trademark infringement claim, because "the Washington Supreme Court made clear that trademark infringement does not necessarily establish a violation of the CPA[.]" Case No. 2:09-cv-285-TSZ, 2010 WL 5463822, *2 (W.D. Wash. 2010) (citing *Seattle Endeavors*, 12 Wash.2d at 350). The Court also noted that its prior decision in *Lahoti v. Vericheck, Inc.*, 708 F. Supp. 2d 1150, 1168 (W.D. Wash. 2010), *aff'd*, 636 F.3d 501 (9th Cir. 2011), was in accord, and "does not support a per se argument." *Id*. at *2. Specifically, this Court observed that "the *Lahoti* court did not simply rest on a finding of trademark infringement, but rather the court, citing *Nordstrom* and *Seattle Endeavors,* made amended findings, after a bench trial and following remand from the Ninth Circuit, of both a strong, inherently distinctive, mark and intentional infringement before concluding that the defendant was liable for violating the CPA." *Id*. (citing *Lahoti*, 708 F. Supp. 2d at 1168).

Thus, although as a general proposition, conduct that constitutes federal trademark infringement will also satisfy the five *Hangman Ridge* elements and therefore violate the WCPA, the Washington Supreme Court has clearly held that there will be exceptions. As discussed below, the Court declines to disturb the jury's reasonable finding that this case constitutes just such an exception. Specifically, because NPI's trade dress was not inherently distinctive[2] or a strong mark, and the jury could reasonably conclude that the "public interest" element of the *Hangman Ridge* test was not satisfied in this case. As a result, the jury's finding that Arkon did not violate the WCPA was supported by substantial evidence in the record.

---

[2] Product design is never inherently distinctive. *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 212 (2000) ("It seems to us that design, like color, is not inherently distinctive.").

*(a) An Unfair or Deceptive Practice*

With respect to the first *Hangman Ridge* element of NPI's WCPA claim, an unfair or deceptive act or practice, "a plaintiff need not show that the act in question was intended to deceive," but only that "the alleged act had the *capacity* to deceive a substantial portion of the public." *Hangman Ridge*, 105 Wash.2d at 785. NPI argues that because the jury concluded that Arkon infringed NPI's registered trade dress, which necessarily involves a finding that Arkon's use of NPI's registered trade dress was likely to cause confusion about the source of NPI or Arkon's goods, this first element is satisfied. Dkt. 182 at 4.

The Court agrees with NPI that, in light of the jury's finding that NPI's trade dress was valid and infringed by Arkon, the first element of the WCPA has been met. The jury found that Arkon infringed NPI's trade dress, which is likely to cause confusion about the source of NPI or Arkon's goods regardless of whether Arkon actually intended to deceive the public.

*(b) Occurring in Trade or Commerce*

The second *Hangman Ridge* element, that the act occurred in "trade or commerce," is satisfied. RCW 19.86.010(2) broadly defines the scope of "trade" or "commerce" as including "the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington."[3] The Washington Supreme Court has broadly interpreted this provision to include every person conducting unfair acts in any trade or commerce. *Nordstrom*, 107 Wash.2d at 740. Specifically, the court held that "in this type of case, involving the use of a trade name advertising to the public, the sale of goods and services falls

---

[3] NPI asserts that the second element was met through Arkon's advertising and sale of infringing goods to consumers in Washington state. Specifically, Arkon's CFO testified that two important Arkon customers were Innovative Intelligent Products and Amazon.com, which are both located in Washington. NPI is also located in Washington, and its products are sold through Seattle-based Amazon.com, and specialty retail stores such as Cabela's, Bass Pro, and GPS Lockbox.

squarely within [the] broad definition [of trade or commerce in RCW 19.86.010(2)]." 107 Wash.2d at 740. The Lanham Act similarly requires "use in commerce" to establish trademark infringement. 15 U.S.C. § 1114(1)(a). Thus, the jury's finding that Arkon infringed NPI's trade dress under the Lanham Act included a finding that Arkon used NPI's trade dress "in commerce," thereby meeting the second *Hangman Ridge* element. Dkt. 177 (jury verdict).

### (c) Injury to NPI's Business or Property, and a Causal Link Between the Unfair or Deceptive Act and the Injury Suffered

The fourth *Hangman Ridge* element requires a showing that plaintiff was injured in his or her "business or property." *Hangman Ridge*, 105 Wash.2d at 780; RCW 19.86.090. No monetary damages need be proven, as nonquantifiable injuries such as loss of goodwill suffice for this element. *Nordstrom*, 107 Wash.2d at 741 (finding that infringement, which injured plaintiff's goodwill and reputation, satisfies the injury requirement). The fifth *Hangman Ridge* element is causation, as only a plaintiff who has been injured in his business or property by a violation of RCW 19.86.020 may bring a private action. *Id.*; RCW 19.86.090. NPI asserts that the jury not only found trademark infringement, but awarded NPI damages, thereby recognizing that Arkon's infringing conduct caused injury to NPI. Dkt. 182 at 8.

By awarding NPI monetary damages, the jury reasonably concluded that Arkon's conduct caused injury to NPI. NPI presented evidence regarding potential loss of customers, as well as harm to its reputation and goodwill. Accordingly, the Court finds that the fourth and fifth *Hangman Ridge* elements were satisfied in this case.

### (d) Affecting the Public Interest

With respect to the third and final *Hangman Ridge* element, which requires the plaintiff to show that the unfair or deceptive act "affects the public interest," NPI assert that a finding of trademark infringement typically satisfies this element because it involves deception or

confusion of the public. Dkt. 182 at 5 (citing *Lahoti*, 636 F.3d at 510). *See also Nordstrom*, 107 Wash.2d at 743. NPI contends that by finding that Arkon infringed NPI's trade dress, the jury necessarily found the existence of likelihood of confusion, which affects the public interest. Dkt. 182 at 6. NPI argues that, unlike the case of *Seattle Endeavors*, this case did not involve "unusual or unforeseen circumstances" that could warrant a departure from the general rule that the likelihood of confusion inherent in trademark infringement pursuant to the Lanham Act will also violate the WCPA. *Id.* As noted above, in *Seattle Endeavors*, the Washington Supreme Court held that two specific factors - "inadvertent infringement" by the defendant and the "weak" nature of the mark at issue – constituted an "unusual and unforeseen circumstance" that did not satisfy the public interest element of the WCPA. The Court will briefly address each of these factors.

(i)  *Willful versus Inadvertent Infringement*

NPI argues that the two factors identified by the Washington Supreme Court in *Seattle Endeavors* are not present here, because the jury found that Arkon's infringement was "deliberate or willful" - the opposite of "inadvertent" - and the jury rejected Arkon's arguments that the infringed mark was "weak" through either genericness or lacking secondary meaning. Dkt. 182 at 6 (citing Dkt. 177). NPI asserts that substantial evidence at trial established that NPI's mark was not "weak," and therefore there was no legally sufficient evidentiary basis for a reasonable jury to depart from the general rule in *Nordstrom* that the public interest element is automatically satisfied through the likelihood of confusion resulting from trade dress infringement. Dkt. 182 at 7.

The Court finds that, contrary to NPI's arguments, the *Seattle Endeavors* case illustrates exactly why a reasonable jury in this case could have concluded that Arkon's trade dress infringement did not affect the public interest. Although the jury did indeed find that

Arkon's infringement was "deliberate or willful" rather than "inadvertent," the jury was instructed that "willful infringement carries a connotation of deliberate intent to deceive, *or willful blindness to facts that would put Arkon on notice that it was infringing NPI's trade dress; that is, Arkon suspected wrongdoing and deliberately failed to investigate.* Deliberate, false, misleading, or fraudulent conduct meets this standard." Dkt. at 30 (Jury Instr. No. 23 – Willfulness) (emphasis added). The jury submitted a single question to the Court during their deliberations: "Is there a legal definition of willful blindness? If so, please send it to us." Dkt. 176. In response, the Court advised the jury that the answer to their question was contained in Jury Instruction No. 23. Thus, it is possible that the jury found that Arkon did not, in fact, intend to deceive the public by infringing NPI's trade dress, but deliberately failed to conduct an adequate investigation. The jury could reasonably find that the "willful blindness" resulting from Arkon's failure to conduct an adequate investigation would satisfy the definition of "willfulness" provided to them. Arkon's conduct – although damaging to NPI – was not equally harmful to the public.

Based upon the testimony from Arkon's representatives at trial, the jury could have reasonably concluded that Arkon was not actually aware of NPI's trade dress. Substantial evidence at trial showed that Arkon's goal in copying NPI's mounts was to compete in the marketplace by creating a product based upon NPI's expired U.S. Patent 5,845,885, an act that actually promotes the public interest and consumer welfare by ensuring that consumers do not bear the high prices that come from a patent monopoly after the innovations in the patent have been dedicated to the public. *See e.g., Smith v. Chanel, Inc.*, 402 F.2d 562, 567-68 (9th Cir. 1968) ("Since appellee's perfume was unpatented, appellants had a right to copy it, as appelless concede. There was a strong public interest in doing so, for imitation is the life blood of competition. It is the unimpeded availability of substantially equivalent unit that permits the

normal operation of supply and demand to yield the fair price society must pay for a given commodity.") (internal citations omitted).

Thus, although the jury did not find that Arkon's infringement was "inadvertent," substantial testimony at trial (as well as the jury's question to the Court seeking a definition of "willful blindness") indicated that the jury's finding of willfulness was likely predicated on Arkon's *failure to investigate* whether NPI had a registered trade dress, rather than knowing infringement. Trademark law makes clear that the public interest in protecting trademarks is only in preventing consumer confusion. Here, the jury was not presented with a consumer survey or other evidence of widespread consumer confusion, apart from testimony by plaintiff's representatives and two of its resellers.[4] In light of the scant evidence of actual consumer confusion presented in this case, the jury could reasonably conclude that although Arkon's infringement of NPI's registered trade dress likely caused some harm to NPI, it was not equally harmful to the public under the circumstances.

(ii)     *NPI's Weak Mark*

As noted above, in *Seattle Endeavors*, the Washington Supreme Court found that unlike in the *Nordstrom* case, which involved a strong mark that "is closely associated with the business it designates" along with "intentional infringement that was apparent," the mark at

_____

[4] Indeed, the only real evidence of "actual confusion" in this case consisted of testimony by a longtime NPI customer, Timothy Petersen, who claimed he was momentarily confused about whether an Arkon shaft used in a product was an NPI shaft due to the similar size, color and shape, until he was quickly able to identify the product as an Arkon product because it said "Arkon" on the knob. Dkt. 195 (Karish Decl.), Ex. B (Trial Tr. 12/05/17). However, Mr. Petersen did not actually make a mistaken purchasing decision. *See Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012) ("Trademark infringement protects only against mistaken purchasing decisions and not against confusion generally."). Other evidence at trial, such as the testimony of Joseph Todzrak, whose company GPS Lockbox and its distributor Nexlink Communications purchased over half of the accused products, testified that there was no confusion. Dkt. 195 (Karish Decl.), Ex. C (Trial Tr. 12/6/17).

1    issue in *Seattle Endeavors* was a "weak mark" and the defendant acted "without improper

2    intent." 123 Wash.2d at 350. As a result, the Supreme Court held that "*inadvertent*

3    *infringement of a weak mark is not sufficient to qualify as a public interest for the purpose of*

4    awarding attorney fees under the Consumer Protection Act." *Id.*

5         Similarly, the Court finds that substantial evidence at trial would support a finding that

6    NPI's mark was weak. In *Seattle Endeavors*, the court explained that a mark is weak if "it is

7    not particularly effective in distinguishing the product or service from others," such as where

8    the mark is used by a "significant number" of businesses operating in the same field and

9    geographic area. 123 Wash.2d at 344-45. Beyond the trade dress registration, the testimony of

10   two resellers of NPI's products, and testimony from plaintiff's own representatives, there was

11   no evidence at trial (such as a consumer survey or other evidence) showing that the hourglass

12   shape trade dress was "particularly effective" in distinguishing NPI's product from others

13   because the public associates the "hourglass shape" with NPI's RAM Mounts brand. In the

14   absence of such evidence, the jury could reasonably conclude that although NPI had a valid

15   trade dress, it was a "weak mark." NPI's argument that its trade dress should be considered a

16   strong source-identifier simply because "it has sold over 17 million products bearing the trade

17   dress, and that even more pocket brochures have been distributed that specifically call out

18   NPI's trade dress" is unpersuasive in light of the fact that NPI owned a patent on this product

19   for two decades. Dkt. 197 at 5.

20        Thus, the Court finds that just as in *Seattle Endeavors*, "unusual or unforeseen

21   circumstances" in this case such as the scant evidence of actual consumer confusion, the

22   weakness of NPI's trade dress, and the fact that Arkon's infringement likely resulted from a

23   willful failure to investigate rather than knowing infringement, would support a finding that

24   Arkon's infringement of NPI's trade dress did not implicate the public interest element of the

WCPA.  *See Johnson v. Paradise Valley Unified School Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001) ("Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence.").  Accordingly, NPI's Renewed Rule 50(b) Motion for Judgement as a Matter of Law that Arkon violated the WCPA, Dkt. 182, is DENIED.

B.  Arkon's Unopposed Motion to Seal Several Exhibits

Arkon moves, with no opposition from NPI, to seal several exhibits submitted in support of Arkon's motion for a new trial.  Dkt. 188.  Specifically, Arkon moves to seal the following three exhibits to Dkt. 191 (Karish Decl.): (1) Exhibit C (Trial Exhibit 410, which contains Arkon's sales information by year from October 2, 2015 to April 30, 2016); (2) Exhibit D (Trial Exhibit 411, which contains Arkon's sales information by year by item number from October 2, 2015 to April 30, 2016); and (3) Exhibit H (Trial Exhibit 422, which contains Arkon's product cost and vendor information).  Arkon asserts that the financial and sales documents contained in these three exhibits were designated as "ATTORNEYS' EYES ONLY" pursuant to the Stipulated Protective Order entered by the Court on June 13, 2016, and should therefore be sealed to protect the non-public, highly sensitive information contained therein.

Having reviewed Arkon's unopposed motion, Dkt. 188, as well as the exhibits at issue, the Court GRANTS Arkon's motion to seal Exhibits C, D, and H to the Declaration of Marc Karish (Dkt. 191) filed in support of Arkon's motion for a new trial.

C.  Arkon's Motion for Judgment as a Matter of Law Pursuant to Rule 50(b)

At the close of the evidence, Arkon moved for judgment as a matter of law pursuant to Rule 50(a) on issues including willfulness, non-infringement, invalidity of the trademark, and lack of harm to Washington consumers.  Dkt. 191 (Karish Decl.), Ex. D (Trial Tr. 12/07/17).

The Court denied Arkon's motion. *Id.* Arkon now moves to renew its motion for judgment as a matter of law pursuant to Fed. R. Civ. 50(b), or alternatively, for a new trial as to these issues. Dkt. 190. As noted above with respect to NPI's Rule 50(b) motion, "a jury verdict [will be] upheld unless it is not supported by substantial evidence." *Janes v. Wal-Mart Stores, Inc.*, 279 F.3d 883, 888 (9th Cir. 2002).

### 1. Substantial Evidence Supported the Jury's Verdict Finding that Arkon's Infringement of NPI's Registered Trade Dress was Deliberate or Willful

Arkon argues that there is "no evidence" upon which the jury could conclude that Arkon deliberately and willfully infringed NPI's trade dress. Dkt. 190 at 2. Arkon asserts that it legally copied NPI's expired patent, but in doing so, had no intention of confusing customers as to the source of the product. *Id.* at 3. With respect to "willful blindness," Arkon asserts that there are two separate periods at issue, and Arkon was not "willfully blind" for either.[5]

The first period of time is the twenty (20) months between January 2014 (when NPI's President Mr. Carnevali approached Arkon's representatives at the Consumer Electronics Show in Las Vegas), and October 2, 2015, when NPI served the complaint, because NPI did not send a cease and desist letter in the interim. *Id.* Arkon points out that the Court excluded damages for any sales during the period of time prior to the service of the complaint. *Id.* (citing Dkt. 150 at 27-28). Nevertheless, Arkon asserts that it "is clear from the jury's question regarding willful blindness" that "the jury considered this period of time in assessing willfulness." *Id.* (citing Dkt. 176). With respect to this time period preceding service of the

---

[5] In an earlier Order, the Court limited the plaintiff to damages for sales occurring after the initiation of the lawsuit because "[t]here is no indication in the record that defendant was aware of plaintiff's registered trademark when it began advertising and selling its RAM-style mounting devices. Nor is there any indication that defendant became aware that plaintiff had registered its mark prior to being served in this action." Dkt. 74 at 6. Due to moderate and inconsistent marking of its registered trade dress, the Court dismissed claims for monetary damages that took place prior to service of the complaint, when defendant would have received actual notice of the plaintiff's rights in its registered trademark. *Id.* at 6-7.

complaint, NPI's President, Mr. Carnevali, testified that he told Arkon's representative at the

CES tradeshow that there are other protections other than just that patent that they may want to

look into that it still may infringe.  Dkt. 191 (Karish Decl.), Ex. B (Trial Tr. 12/5/17).  Arkon's

President Mr. Brassard testified that he reviewed NPI's webpage about its patents and

trademarks, and saw no information about the alleged trade dress.  Dkt. 191, Ex. C (Trial Tr.

12/6/17), Ex. F (Trial Ex. 585).  Arkon argues that it was error to allow a jury instruction

regarding willful blindness, and this constituted grounds for a new trial even though Arkon did

not timely object to this instruction at trial.  Dkt. 190 at 4 (citing Fed. R. Civ. P. 51(d)(2) ("A

court may consider a plain error in the instructions that has not been preserved as required by

Rule 51(d)(2) if the error affects substantial rights.")).  Arkon contends that the Court should

have adopted its proposed alternative instruction, and the cases cited by NPI in support of this

instruction were distinguishable.  *Id.* at 5.[6]

With respect to the second period of time at issue, the seven months of sales of Arkon's

accused products from October 2, 2015 through April 2016 when Arkon finished its sales of

the originally designed product (thus terminating the second period of damages), Arkon

contends that the parties were engaged in settlement discussions and Arkon was redesigning its

products.  Prior to trial, Arkon sought a motion *in limine* under Fed. R. Evid. 407 to bar the

jury from hearing that Arkon redesigned its products, fearing that the jury would unfairly

construe Arkon's attempts at amelioration to be an admission of liability.  Over NPI's

objection, Arkon's motion was granted.  Dkt. 150 at 27.  Now, however, because the jury was

---

[6] *Philip Morris USA Inc. v. Lui*, 489 F. Supp. 2d 1119, 1123 (C.D. Cal. 2007); *Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989); *Bikila v. Vibram USA Inc.*, 218 F.Supp.3d 1206, 1212 (W.D. Wash. 2016); *Masters Software, Inc. v. Discovery Commc'ns, Inc.*, 723 F. Supp. 2d 1294, 1305 (W.D. Wash. 2010).

not informed of the settlement discussions pursuant to Fed. R. Evid. 408[7] or the fact that Arkon had redesigned its products after the lawsuit was initiated (pursuant to Arkon's own motion *in limine*), Arkon contends that the jury was left to speculate as to what happened during this seven month period. During closing arguments, counsel for NPI argued that Arkon's trade dress registration was in effect during this seven month damage period, and therefore Arkon's infringement was deliberate and willful for that period of time. Dkt. 191 (Karish Decl.), Ex. E (Trial Tr. 12/8/17). As a result, Arkon argues that the Court's ruling to exclude testimony regarding settlement discussions after the service of the complaint was also error. Dkt. 190 at 5. Because willfulness was a prerequisite to awarding Arkon's profits, and Arkon maintains there was no willfulness in this case, Arkon asks the Court to reverse the jury's award of all damages. *See Stone Creek, Inc. v. Omnia Italian Design, Inc*. 875 F.3d 426, 439 (9th Cir. 2017) (observing that "[h]istorically, we have imposed a willfulness requirement with respect to disgorgement of profits," and holding that a 1999 amendment to the Lanham Act's remedies provision "has not changed the state of the law on disgorgement and . . . willfulness is still required.").

The Court finds that although it would be possible to draw a contrary conclusion, the evidence was adequate to support the jury's verdict that Arkon acted willfully in this case under the broad definition by the Ninth Circuit. The Ninth Circuit recently reiterated that an award of profits is not "automatic" upon a finding of trademark infringement, and profits are only granted "where the defendant is attempting to gain the value of an established name of another." *Fifty-Six Hope Red. Music, Ltd. v. A.V.E.L.A. Inc*., 778 F.3d 1059, 1074 (9th Cir.

---

[7] Although neither party addressed a motion *in limine* to the issue of their settlement discussions, when Arkon's President Mr. Brassard stated that the parties were trying to see if they could arrange some kind of settlement early in the case, the Court sustained a Fed. R. Evid. 408 objection by NPI. Dkt. 213 (Off. Trial Tr. 12/6/17) at 641:17-644:13.

2015) (quoting *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993)). Willful trademark infringement "requires a connection between a defendant's awareness of its competitors and its actions at those competitors' expense," but does not require proof of the defendant's deliberate intent to confuse the public as to source. *Id.* Deliberate, false, misleading, or fraudulent conduct also meets the standard for willfulness. *Id.* Federal courts have observed that "[u]se of an infringing mark, in the face of warnings about potential infringement, is strong evidence of willful infringement." *E. & J. Gallo Winery v. Consorzio del Gallo Nero,* 782 F. Supp. 472, 475 (N.D. Cal. 1992) (cited with approval by the Ninth Circuit in *Fifty-Six Hope Road Music*, 778 F.3d at 1074).

Arkon's contention that it was improper to include a willful blindness jury instruction is unpersuasive, as other federal courts in the Ninth Circuit have recognized that "willfulness can be established by evidence . . . that the defendant acted with an 'aura of indifference to plaintiff's rights' – in other words, that the defendant willfully blinded himself to facts that would have put him on notice that he was infringing another's trademarks, having cause to suspect it." *Philip Morris USA, Inc. v. Liu,* 489 F. Supp. 2d 1119, 1123 (C.D. Cal. 2007) (citing *Hard Rock Cafe Lic. Corp. v. Concession Servs.,* 955 F.2d 1143, 1149 (7th Cir. 1992) ("To be willfully blind, a person must suspect wrongdoing and deliberately fail to investigate."); *Louis Vuitton S.A. v. Lee,* 875 F.2d 584, 590 (7th Cir. 1989) ("[I]t is enough ... that the defendant failed to inquire . . . because he was afraid of what the inquiry would yield.")). As noted above, Arkon also did not object to this instruction at trial.

As Judge Lasnik observed at the summary judgment stage, "there is no indication that defendant became aware that plaintiff had registered its mark prior to being served in this action." Dkt. 74 at 4. Similarly, at trial, there was no evidence that Arkon had conducted a thorough investigation and actually discovered that NPI had a registered trade dress in the

hourglass shape of its double-socket mount, but nevertheless deliberately infringed NPI's trade dress. However, the jury's willfulness verdict, if premised upon a theory of willful blindness, is supported by substantial evidence in the record.

Specifically, the record shows a direct connection between Arkon and its competitor, NPI, and action by Arkon at NPI's expense. *See Fifty-Six Hope Road Music*, 778 F.3d at 1074. Arkon's President Paul Brassard was familiar with NPI and RAM Mounts from trade shows, online searches, consulting NPI's website, and receiving NPI's marketing materials. Arkon referred internally to its Robust Mounts as "RAM style mounts," and identified RAM Mounts as a "top tier competitor." Evidence at trial established that Arkon knew that the RAM Mount was the only double-ball socket mount on the market when it introduced its Robust Mounts products, and in fact, Mr. Brassard purchased RAM Mounts in 2013 (which likely included pocket brochures showing the hourglass shape trade dress) and used the RAM Mounts to design Arkon's Robust Mounts. Dkt. 203, Ex. 3.

Mr. Brassard testified that he hired legal counsel due to his perception that Mr. Carnevali was legally savvy about protecting his intellectual property. However, apart from Mr. Brassard's testimony that he did not personally see any trade dress rights listed on NPI's website alongside its patents, Arkon did not introduce any evidence, such as testimony from its trademark attorney, showing what (if any) kind of investigation was conducted by Arkon to determine whether NPI had other rights apart from the expired patent rights in the accused products. Moreover, the jury heard the undisputed testimony of NPI's President Mr. Carnevali that he told Arkon's representative at the CES tradeshow that there were other protections *other than just that patent* that Arkon may want to look into that may still infringe NPI's rights. Dkt. 191 (Karish Decl.), Ex. B (Trial Tr. 12/5/17) (emphasis added). Arkon's president Mr. Brassard also testified that he purchased NPI products for his designer to copy in 2013, which

was after NPI began packaging its products with a pocket brochure identifying the distinctive hourglass shape on the cover. Dkt. 203, Ex. 3.[8]

Especially after Mr. Carnevali advised Arkon's representatives that there were other protectable rights, apart from the expired patent, pertaining to the RAM mounts at issue, the jury could find that Arkon acted with "willful blindness" by failing to conduct a thorough investigation and ascertain NPI's registered trade dress before copying NPI's product to launch its own line of Robust Mounts.[9] Thus, viewing the evidence in the light most favorable to NPI, substantial evidence supported the jury's verdict finding of willfulness, and Arkon's motion for judgment as a matter of law on this issue is DENIED.

### 2. Substantial Evidence Supported the Jury's Verdict on Likelihood of Confusion

Arkon contends that when the evidence is construed in the light most favorable to NPI, there was insufficient evidence to support the jury's finding of likelihood of confusion. Dkt. 190 at 7. Specifically, Arkon contends that "although Arkon and NPI sold similar products, through the same marketing channels to similar customers, the weakness of the mark, the

---

[8] NPI introduced brochures showing the "sexy distinctive hourglass shape" on the front panel in 2007, and the hourglass shape was identified as a trademark on the back of the brochure beginning in 2006. Dkt. 203, Ex. C (Trial Exs. 28, 29, 34, 36, 467). However, NPI did not mention the hourglass shape on any webpages prior to 2010. Dkt. 187 (Karish Decl.), Ex. C. NPI also did not clearly mark its products, packaging, labels, catalogs, or most of its webpages with an indication that it had a *registered trade dress* in the hourglass shape even after U.S. Trademark Registration No. 4,254,086 was granted on December 4, 2012. Dkt. 187 (Karish Decl.), Ex. C; Dkt. 187-6. As discussed above, NPI's marking violation was the reason why the damages period in this case was limited to the time after service of the complaint.

[9] Similarly, the jury reasonably could have found that the fact that Arkon continued to sell the accused products until April 2016, seven months after Arkon became aware of NPI's registered trade dress in October 2015, reflected willfulness on Arkon's part. It is irrelevant that settlement negotiations were underway during that time period, or that Arkon was also redesigning its product, as Arkon did not cease sales of the accused product following service of the complaint for months even after the redesign was complete. Moreover, the jury did not hear any testimony regarding Arkon's redesigned product, because the Court granted Arkon's own motion *in limine* to exclude such testimony to prevent any prejudice to Arkon. Dkt. 186 at 6; Dkt. 150 at 24.

dissimilarities of the products, and the lack of evidence of actual customer confusion show that the jury's verdict was not supported by substantial evidence." Dkt. 204 at 4. First, Arkon argues that the sole evidence of actual confusion was from a longtime customer of NPI, Timothy Petersen, who testified that he was momentarily confused, and this is insufficient to establish confusion among an appreciable number of customers. *Id.* (citing *Entrepreneur Media v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002)). Arkon further argues that there was no evidence beyond the trade dress registration, testimony of two NPI resellers, and testimony from NPI's owners that the public associates the "hourglass shape" with NPI. *Id.* at 9. Similarly, apart from a letter from Mr. Brassard to Arkon's supplier stating that he wanted to produce a product related to NPI's expiring patent, Arkon contends that there was no evidence that Arkon attempted to derive a benefit from NPI's reputation, because Arkon prominently displayed its own name on the knob of the products and packaging. *Id.* at 9-10.

The Court finds that Arkon's limited analysis of the *Sleekcraft* factors does not show that the jury's finding that there was a likelihood of confusion is unsupported by substantial evidence. The Ninth Circuit considers eight "*Sleekcraft*" factors to determine whether a likelihood of confusion (and therefore trademark infringement) exist, and these factors include: (1) strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care customers are likely to exercise in purchasing the goods; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion into other markets. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). Some factors are more important than others, and the relative importance of each factor will be case-specific. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999). The Ninth Circuit has also

recognized that "some factors – such as the similarity of the marks and whether the two companies are direct competitors – will always be important." *Id.*

As discussed above, the Court agrees with Arkon that NPI's trade dress is quite weak. Contrary to NPI's contention, the commercial success of the RAM mounts – in light of the many years the design of these mounts were protected from market competition by a patent – does not provide evidence of a strong mark in this case.[10] *Compare GoTo.com Inc. v. Walt Disney* Co., 202 F.3d 1199, 1208 (9th Cir. 2000) (finding that GoTo's "tremendous success" strengthened its otherwise suggestive mark). Thus, the first *Sleekcraft* factor weighs in favor of Arkon.

The second *Sleekcraft* factor, proximity or relatedness of goods, weighs strongly in NPI's favor. *See Brookfield Commc'ns*, 174 F.3d at 1054 (noting that some factors, such as "whether the two companies are direct competitors . . . will always be important."). NPI presented evidence that the products are so similar in design that the parts can be used interchangeably, and they are used for identical mounting applications. Dkt. 202, Ex. 3 (Trial Tr. 12/6/17). Although Arkon's products were not as widely distributed as NPI's mounts, NPI and Arkon are direct competitors in substantially the same markets. Dkt. 202, Exs. 1-3.

The third *Sleekcraft* factor, the similarity of the marks, also weighs in NPI's favor. Based solely on the appearance of the RAM and Arkon mounts, a reasonable jury could find that the hourglass shape of Arkon's mount is similar to a RAM mount. Arkon's president referred to their mounts as "RAM style mounts" and called them nearly identical in appearance and quality. Dkt. 202, Ex. 20 (Trial Ex. 249). He also admitted that Arkon specifically sent an NPI RAM mount he had purchased to his designer so that the designer could copy the RAM

---

[10] Testimony from Mr. Hersey established that NPI had sold over 17 million units of hourglass-shaped mounts since 1992, generating $261.9 million in sales. Dkt. 202 (Trial Tr. 12/6/17)).

mount arm, and the RAM and Arkon parts are so similar they are interchangeable with each other. Dkt. 202, Ex. 3 (Trial Tr. 12/6/17).

The fourth *Sleekcraft* factor, evidence of actual confusion, tips in favor of NPI, but only slightly. Two witnesses at trial, Mr. Petersen and Mr. Carnevali, testified about instances of actual confusion. Dkt. 202, Ex. 2 (Trial Tr. 12/5/17). Mr. Carnevali testified that he had heard of an incident of actual confusion the same week of the trial. Mr. Petersen described entering a conference room and seeing what he thought was a RAM mount attached to a GPS lockbox product, only to realize upon closer inspection that it was actually an Arkon mount. The Court finds that neither of these instances are strong evidence of actual confusion. Mr. Carnevali's testimony was vague, at best, and Mr. Petersen did not make a mistaken purchasing decision based upon his initial confusion. He also testified that he quickly realized his error when he read the word "Arkon" printed on the knob of the product. Even assuming that Mr. Petersen falls within the category of a "reasonably prudent consumer in the marketplace," because he purchases vehicle mounts for his company PeopleNet Communications, a single instance of actual confusion which was quickly rectified by reading the name printed on the product's knob is not strong evidence. Dkt. 202, Ex. 2 (Trial Tr. 12/5/17). *See Rearden*, 683 F.3d at 1213-1214 (holding that likelihood of confusion is relevant from the perspective of a "reasonably product consumer in the marketplace," but not the non-purchasing general public). Thus, this factor only slightly weighs in favor of NPI.

The fifth *Sleekcraft* factor weighs substantially in NPI's favor, as evidence at trial showed that NPI and Arkon used the same marketing channels including Amazon.com, their own websites, catalogs, and trade shows (including the annual Consumer Electronics trade show in Las Vegas). The Court finds that the sixth *Sleekcraft* factor, the degree of care customers are likely to use in purchasing the goods in light of the type of goods, also weighs in

favor of NPI and likelihood of confusion. The NPI and Arkon mounts are not so expensive that consumers would be expected to do a great deal of research before purchasing the product, and are therefore more likely to be confused.

The seventh *Sleekcraft* factor, defendant's intent in selecting the mark, is neutral. As discussed above, the evidence of record shows that Arkon wanted to produce a product related to NPI's expiring patent and to compete with NPI, not that Arkon deliberately sought to confuse customers into purchasing Arkon's products. Dkt. 204 at 7. Finally, with respect to the eighth *Sleekcraft* factor, it is highly likely that both Arkon and NPI's products will continue to expand into similar markets, and therefore this factor weighs in favor of NPI.

Although there is no single factor which is dominant in this case, the majority of the *Sleekcraft* factors weigh in favor of NPI. In light of the evidence presented, the court cannot conclude that the jury's finding of likelihood of confusion was not supported by substantial evidence. Arkon's motion for judgment as a matter of law that the jury could not reasonably have found trade dress infringement is therefore DENIED.

### 3. Substantial Evidence Supports the Jury's Verdict on Damages

Arkon contends that, even construing the evidence in the light most favorable to NPI, NPI has not provided evidence that Arkon's conduct caused harm to NPI, which is a prerequisite to damages. Dkt. 186 at 10 (citing *Harper House v. Thomas Nelson, Inc.*, 889 F.2d 197, 209 (9th Cir. 1989)).[11] Specifically, Arkon asserts that NPI's sales continued to increase after introduction of the accused products despite other competitors entering the

---

[11] Arkon concedes that if NPI establishes trademark infringement, NPI is entitled to an award of any damages sustained by NPI "subject to equitable principles." *Id.* at 10-11 (citing 15 U.S.C. § 1117(a); *Lindy & Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993)). However, Arkon points out that although NPI has a lower burden of proof in ascertaining the exact amount of damages, as 15 U.S.C. § 1117(a) only requires the plaintiff to prove the amount of defendant's sales in assessing "infringer profits," there is no lower standard of proof with respect to causation.

marketplace after NPI's patents expired. Dkt. 190 (Karish Decl.), Ex. C (Trial Tr. 12/6/17). Arkon also asserts that the only evidence of a lost customer was Mr. Carnevali's testimony that an employee in NPI's sales department notified him in 2015 that NPI had lost GPS Lockbox as a customer to Arkon, and there was no proof that this lost sale was due to any confusion. *See* Dkt. 203 (Ware Decl.) (Trial Tr. 12/4/17). Finally, Arkon argues that NPI did not provide any evidence that Arkon's sales of its products caused any injury to NPI's reputation or goodwill, and the jury rejected NPI's request for $470,000 for corrective advertising damages. Dkt. 190 at 11.

NPI responds that a renewed motion for judgment as a matter of law under Rule 50(b) is limited to the grounds asserted in the Rule 50(a) motion, and Arkon failed to argue that NPI did not prove any damages in its Rule 50(a) motion. *See E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961-62 (9th Cir. 2009). Rather, Arkon only argued that NPI should not have been allowed to present evidence regarding corrective advertising based on a purported failure to timely disclose those alleged damages. Dkt. 203, Ex. 4 (Trial Tr. 12/7/17). In any event, NPI argues that evidence of harm to NPI includes evidence that NPI and Arkon were direct competitors in many of the same markets, Arkon's infringing sales caused NPI to lose customers, Arkon sold its infringing products at a discount to RAM Mounts and an even steeper discount to win sales from NPI customers, confusion regarding Arkon's products damaged NPI's reputation for quality, and Arkon's use of the trademark shape detracted from the public identification of that shape as a source indicator for RAM. Dkt. 202 at 11.

The relevant portion of 15 U.S.C. § 1117(a) provides for an award, subject to equitable principles, of "(1) defendant' profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action . . . In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Lindy Pen Co.,*

*Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993), *superseded by statute on other grounds,* Trademark Amendments Act of 1999, Pub.L. No. 106–43, 113 Stat. 218.  An award of profits is not automatic upon a finding of infringement, but must be granted in light of equitable considerations.  *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A. Inc.*, 778 F.3d 1059, 1074 (9th Cir. 2015).  In seeking to achieve equity between the parties, the court must fashion a remedy wherein the defendant may "not retain the fruits, if any, of unauthorized trademark use or continue that use [and the] plaintiff is not . . . [given] a windfall." *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.,* 750 F.2d 903, 918 (Fed. Cir. 1984).  Awarding profits "is proper only where the defendant is 'attempting to gain the value of an established name of another.' " *Lindy Pen Co.,* 982 F.2d at 1406 (quoting *Maier Brewing Co. v. Fleischmann Distilling Co.,* 390 F.2d 117, 123 (9th Cir. 1968)).

The Ninth Circuit has recognized that a plaintiff must prove both the fact and amount of damage.  "Damages are typically measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the infringement." *Lindy Pen. Co.*, 982 F.2d at 1407.  Because proof of actual damage is often difficult, a court may award damages based on defendant's profits on the theory of unjust enrichment.  The statute further permits an award of reasonable attorneys' fees to prevailing plaintiffs in "exceptional cases." 15 U.S.C. § 1117(a).  "Exceptional" is defined as "malicious, fraudulent, deliberate or willful." *Lahoti v. Vericheck, Inc.*, 708 F.Supp.2d 1150 (W.D. Wash. 2010) (citing *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000)).

NPI is correct to point out that Arkon did not properly preserve the issue of insufficient proof of causation or damages in its Rule 50(a) motion at trial.  As a result, Arkon cannot properly raise the issue for the first time in its Rule 50(b) motion.  Even if Arkon had preserved the issue, the Court finds that the jury's finding of causation and damages was supported by

substantial evidence at trial. The jury awarded NPI money damages in the amount of $193,598. Dkt. 177. This $193,598 damages award is the precise amount that NPI's damages expert, Drew Voth, testified was his calculation of Arkon's gross sales (not profits) of the accused products from October 2, 2015 through April 30, 2016 based upon Arkon's financial documents. Dkt. 212 (Off. Trial Tr. 12/5/17) at 416:12-23.[12] Moreover, at trial Arkon agreed with Mr. Voth's testimony that $193,598 represented Arkon's gross sales during the damages period. Dkt. 212 (Off. Trial Tr. 12/5/17) at 203:10-12. There is no indication that the jury acted contrary to the jury instructions on damages provided to them, and as to which Arkon did not object. Accordingly, Arkon's Rule 50(b) motion on the issue of damages is DENIED.

### 4. Substantial Evidence Supported the Jury's Verdict Finding NPI's Trade Dress to be Valid

Arkon's final contention in its Rule 50(b) motion is that NPI failed to provide sufficient evidence of a valid trade dress. Dkt. 186 at 11. Specifically, Arkon argues that it rebutted the presumption of validity created by the registration by showing that NPI had previously claimed the alleged trade dress in NPI's expired patents. *Id.* Arkon further argues that it provided evidence showing that the materials considered by the USPTO during prosecution were inadequate to find secondary meaning. *Id.* Accordingly, Arkon contends that NPI failed to provide evidence from which a jury could reasonably conclude that the public associated the alleged trade dress with NPI prior to January 2014 when Arkon introduced the accused products. *Id.* at 12.

---

[12] Mr. Voth also testified that Arkon had certain costs which could properly be deducted from the gross sales. Dkt. 212 (Off. Trial Tr. 12/5/17) at 416:19-23. However, the jury did not deduct these costs from Arkon's $193,598 in gross sales. Neither party addressed this issue with respect to the Rule 50(b) motions, and it is instead addressed below with respect to Arkon's motion for a new trial or remittitur.

The Court finds that substantial evidence at trial supports the jury's finding that NPI's registered trade dress was valid. NPI presented evidence that the trade dress was shown, described, and claimed only in expired patents, and argued that reference to a trade dress outside the claims of a final issued patent do not support invalidity. Dkt. 202 at 12. NPI also presented evidence to show that its trade dress was valid, apart from the registration, because it was non-functional, not claimed in any patent, and has acquired secondary meaning. Accordingly, substantial evidence supports the jury's conclusion that NPI's trade dress is valid, and Arkon's motion for judgment as a matter of law as to invalidity is also DENIED. Dkt. 186.

### D. Arkon's Motion for a New Trial or Remittitur

Arkon argues that the jury's verdict awarding NPI damages of $193,598, Dkt. 177, which represents Arkon's entire gross sales (not profits) from October 2, 2015 through April 30, 2016, is excessive. Dkt. 190 at 1. Arkon asks the Court to set aside the verdict and grant a new trial on the issue of damages, or alternatively, order a remittitur. *Id.* at 11-12. As discussed below, Arkon's request for a new trial is DENIED. However, the Court does order a remittitur of the jury's damages award to properly account for the testimony of NPI's damages expert regarding Arkon's costs that should have been deducted from Arkon's gross sales for the relevant period, to arrive at an accurate estimate of Arkon's infringer's profits.

#### 1. Legal Standards

Rule 59(a) provides that "[a] new trial may be granted . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a)(1). The burden of proof on a motion for a new trial is on the moving party, and the Court should not lightly disturb a plausible jury verdict. Although Rule 59 does not specify the grounds on

which a motion for a new trial may be granted, this Court is "bound by those grounds that have been historically recognized." *Zhang v. American Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). Historically recognized grounds include, but are not limited to, claims "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). In the Ninth Circuit, "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n. 15 (9th Cir. 2000).

Remittitur is a remedy available to correct excessive verdicts. *Pershing Park Villas Homeowners Assoc. v. United Pac. Ins. Co.*, 219 F.3d 895, 905 (9th Cir. 2000). A trial court reviewing a damages award attacked as excessive must consider the evidence of damages in a light most favorable to the prevailing party. *Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385, 1387 (9th Cir. 1987), *amended on other grounds by*, 817 F.2d 609 (9th Cir. 1987). A trial court granting a motion for remittitur does not substitute its judgment for that of the jury, but instead reduces the judgment to the maximum amount sustainable by the proof. *D & S Redi-Mix v. Sierra Redi-Mix & Contracting Co.*, 692 F.2d 1245, 1249 (9th Cir. 1982) (citations omitted).

### 2. Arkon's Motion for a New Trial is Denied

Arkon contends that a new trial on the issue of damages is warranted because (1) the period itself was incorrect and included substantial sales of redesigned products, (2) half the sales were to entities that testified they were not confused, (3) the jury failed to take into consideration any cost of Arkon's products (despite the admission of supporting evidence and

a duty to deduct proven costs), and (4) NPI's corrective advertising testimony should have been excluded. Dkt. 190 at 2.

First, Arkon argues that "one large sale of $56,700 was made to Nexlink Communications, LLC . . . on April 29, 2016, one day before the Court's cutoff. That sale was of the redesigned products and should not have been taken into consideration by the jury." Dkt. 190 at 3.[13] However, at trial Arkon agreed with Mr. Voth's testimony that $193,598 represented Arkon's gross sales during the damages period. Dkt. 212 (Off. Trial Tr. 12/5/17) at 203:10-12. Attorney argument is not evidence, and Arkon's attempt to rely on documents outside the trial record to argue for the first time that Mr. Voth's calculation of Arkon's gross sales was inaccurate does not provide grounds for a new trial. *See Chen v. City of Medina*, No. C11-2119-TSZ, 2013 WL 4511411, at *1 n.1 (W.D. Wash. Aug. 23, 2013) ("Such information was not before the jury and is not appropriate for consideration on a motion for new trial.").

Second, Arkon asserts that the owner of Innovative Intelligent Products/GPS Lockbox, Joseph Todrzak, testified that neither his company, nor his distributor Nexlink Communications, were confused that any Arkon products were actually an NPI product. Dkt. 191 (Karish Decl.), Ex. F (Trial Tr. 12/6/17). Arkon asserts that of the total sales from the relevant time period, $114,501.35 were to Innovative Intelligent Products/GPS Lockbox and Nexlink Communications. Dkt. 191 (Karish Decl.), Exs, C, D (Trial Exs. 410, 411). Arkon asserts that these sales should not have been awarded to NPI as profits attributable to the infringement, or even included in the jury's calculations of gross profit, because they were not the result of any confusion. If these sales were removed, the gross sales would be reduced to $79,097. Dkt. 190 at 3.

---

[13] Arkon asserts that this one sale skewed the damages award, and exclusion of that sale would reduce the gross sales to $136,989. *Id.*

Arkon misses the point. The standard for trademark infringement liability is whether commercial use and sale of the infringing article is likely to confuse consumers, *i.e.,* the consuming public generally and not only specific customers. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 346 (9th Cir. 1979) ("the crux of this appeal is whether concurrent use of the two marks is likely to confuse the public"); *GoTO.com, Inc. v. Walt Disney Co*., 202 F.3d 1199, 1205 (9th Cir. 2000) ("We now examine whether GoTO can show that the public is likely to be confused about the source or sponsorship of Disney's logo."). Arkon has not cited any authority to support its assertion sales to customers who stated they were not confused, although they purchased goods bearing the infringing trade dress, should be excluded from damages calculations. NPI is entitled to infringer's profits, *i.e.*, profits from sales of the infringing products during the relevant period.

Third, Arkon argues that the jury's verdict showed that it deducted no costs whatsoever from Arkon's gross sales from October 2, 2015 through April 30, 2016, although Arkon presented evidence of costs that should have been deducted from its gross sales. Dkt. 190 at 8.[14] Because the jury instead awarded NPI the entire amount of Arkon's gross sales during the relevant period, Arkon believes that "it can be concluded that the jury was swayed by the testimony of corrective advertising" which Arkon believes should have been excluded due to

---

[14] Specifically, Arkon asserts that the jury should have credited the following evidence at trial: (1) Aaron Roth's testimony that costs totaled $93,125.71 because gross margins were less than 52%, and that it was difficult for Arkon to calculate an exact amount of costs because the accused products have many different parts that are procured separately; (2) NPI's Aaron Hersey agreed that profit margins in the range of 50% are normal for products bearing the alleged trade dress; (3) Aaron Roth testified the most basic pedestal sold by Arkon and used in almost every product cost approximately $1.85; (4) Arkon's Paul Brassard testified some of the accused products can cost as much as $10 each, and testified about invoices showing Arkon's costs during the relevant time period; (5) Aaron Roth testified thousands of products had been sold during the relevant period; (6) NPI admitted Arkon's cost documents into evidence; and (7) NPI's damages expert Drew Voth estimated that there were $26,358.45 of potentially deductible costs in Arkon's invoices in Trial Exhibit 422. Dkt. 190 at 4, 8-9.

NPI's untimely disclosure. *Id.* Arkon asserts that "the jury was likely biased into thinking they were 'splitting the baby' by not awarding corrective advertising damages, when that issue should never have been before them." *Id*. Thus, Arkon asks the Court to set aside the verdict and grant a new trial on the issue of damages, or enter a remittitur to $41,130. *Id*. at 5.

As a threshold matter, the Court finds that Arkon overstates the significance of its own evidence regarding costs. For example, the jury may have considered testimony regarding Arkon's "profit margins" somewhat unhelpful in determining what the costs were "of actual assistance in the production, distribution or sale of the infringing product." *Kamar Int'l*, 752 F.2d at 1332. Similarly, the jury was not required to credit Mr. Brassard's testimony regarding Arkon's "basic costs" or his testimony that total costs associated with Arkon products during the relevant period was $93,125.71. The jury could reasonably credit Mr. Voth's testimony instead, and Mr. Voth stated that Mr. Brassard had not identified any proven costs or supported the numbers he was claiming with the financial documents he produced.

Despite the deficiencies in Arkon's arguments, the Court does find that the jury's failure to subtract *any* of Arkon's costs, which even NPI's own damages expert, Mr. Voth, testified could properly be deducted from Arkon's gross sales of $193,598 during the relevant period, resulted in an excessive award of infringer's profits to NPI. As discussed above, 15 U.S.C. § 1117(a) grants the Court the authority to reduce an excessive calculation of infringer's profits and "enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." Once a plaintiff has proven sales, the burden shifts to the defendant to "prove all elements of cost of deduction" claimed to arrive at profits.

On a motion for a new trial or remittitur, if the Court, after viewing the evidence concerning damages in the light most favorable to the prevailing party, determines that the damages award is excessive, it has two alternatives: it may grant defendant's motion for a new

trial or deny the motion conditional upon the prevailing party accepting a remittitur. The prevailing party is given the option of either submitting to a new trial or of accepting a reduced amount of damages which the court considers justified. *Seymour v. Summa Vista Cinema, Inc*., 809 F.2d 1385, 1387 (9th Cir. 1987); *Fenner v. Dependable Trucking Co., Inc.,* 716 F.2d 598, 603 (9th Cir. 1983). If the prevailing party does not consent to the reduced amount, a new trial must be granted. If the prevailing party accepts the remittitur, judgment must be entered in the lesser amount. *Fenner,* 716 F.2d at 603. "Generally, a jury's award of damages is entitled to great deference, and should be upheld unless it is 'clearly not supported by the evidence' or 'only based on speculation or guesswork.' " *In re First All. Mortg. Co.*, 471 F.3d 977, 1001, 1003 (9th Cir. 2006) (quoting *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1360 (9th Cir. 1986) (finding remittitur proper where the damages calculation was based on a legally incorrect theory of damages under the applicable California law)). The proper amount of a remittitur is the maximum amount sustainable by the evidence. *Id.*

Here, the Court finds the jury's damages award of $193,598 in gross sales to be excessive and clearly unsupported by the evidence, in light of the testimony of NPI's damages expert, Drew Voth, that Arkon's invoices reflect $26,358.45 in deductible costs during the relevant period. Although Mr. Voth initially testified that Arkon had not appropriately proven deductible costs, he acknowledged that Arkon would have incurred *some* costs to manufacture the accused products. Dkt. 191 (Karish Decl.), Ex. E. Mr. Voth subsequently testified that he had performed his own analysis of Arkon's invoices reflecting costs incurred over the relevant period. Mr. Voth testified that when he added up the units sold over the damages period, he calculated $26,358.45 of costs that were supported by Arkon's invoices. Mr. Voth created a spreadsheet using the invoices (Trial Exhibit 422) which he showed to the jury reflecting $26,358.45 of potentially deductible costs. Thus, the testimony of NPI's own damages expert

established that Arkon should have been entitled to at least a deduction of $26,358.45 in costs from the $193,598 in gross sales, resulting in an "infringer's profits" award to NPI of $167,239.55 rather than the jury's award of $193,598 in gross sales.

Finally, the Court rejects Arkon's fourth and final contention that the jury was somehow biased by NPI's request for $470,000 damages for corrective advertising. From the outset of this action, NPI has claimed that Arkon damaged NPI's business, reputation and goodwill. *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209 n.8 (9th Cir. 1989) (remedy for damage to reputation and goodwill may be corrective advertising). Arkon's assertion that the jury must have been "splitting the baby" by awarding gross sales, and declining to award NPI's requested corrective advertising, is speculative at best. The jury's verdict, which did not award any damages to NPI for corrective advertising, more likely reflects a finding that NPI's corrective advertising damages were unsubstantiated, rather than some kind of bias. In any event, Arkon's argument that it was prejudiced by this testimony is not supported by any evidence in the record, as the jury declined to award any damages for corrective advertising.

Accordingly, the Court DENIES Arkon's motion for a new trial, Dkt. 190, conditional upon NPI's acceptance of a remittitur reducing the damages award from $193,598 to $167,239.55, which is the maximum amount supported by the evidence consistent with the testimony of NPI's own expert, Mr. Voth, regarding Arkon's deductible costs. *See Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014) ("a remittitur must reflect the maximum amount sustainable by the proof."). *See also Hetzel v. Prince William County, Va.*, 523 U.S. 208, 118 S. Ct. 1210, 1211-1212 (1998). NPI shall advise the Court as to whether it accepts the remittitur, or would instead prefer a new trial as to damages, within **thirty (30) days** of the date of this Order.

### E. Arkon's Motion to Amend the Judgment

Arkon's final motion asks the Court to amend or alter the judgment pursuant to Fed. R. Civ. P. 59(e). Dkt. 196. Specifically, Arkon contends that the judgment must be amended to include the fact that NPI dismissed four claims at the Final Pretrial Conference, and Arkon should be awarded attorney's fees for their work on these claims until the eve of trial. Arkon asserts that because NPI did not dismiss these claims earlier in the case, they must be dismissed under Fed. R. Civ. P. 41(b) for failure to prosecute "and because of the late stage of the proceedings, they must be dismissed with prejudice." Dkt. 196 at 5. Arkon argues that NPI is already pursuing these claims in this district "on these same products, against Arkon's customer in a case in which Arkon is being sued for patent infringement" and NPI is using these common law claims to keep that case in Washington. *Id*. Arkon asserts that "one can only assume that Plaintiff will dismiss these claims again – just before trial, if one occurs." *Id*. Finally, Arkon contends that the judgment should be reopened to enter judgment in favor of Arkon on the affirmative defenses of unclean hands and estoppel. *Id*. at 6.

Arkon's motion to amend or alter the judgment is procedurally improper and lacks merit. Specifically, Arkon has failed to identify any newly discovered evidence, clear error, or intervening change in the law that would allow the Court to disturb the judgment under Fed. R. Civ. P. 59(e). *See Ybarra v. McDaniel*, 656 F.3d 984, 998 (9th Cir. 2011) (providing that a Rule 59(e) motion may be granted if "(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law."). Amending a judgment is "an extraordinary remedy which should be used sparingly." *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (*en banc*).

As the Court explained to the parties at the pretrial conference, Arkon is not entitled to attorney's fees as a result of NPI's decision not to try several overlapping claims in an effort to simplify the case going to the jury. Arkon alleges that "NPI is making strategic use of what are really 'phantom claims' – ghostly arguments that chase the parties into court, make them spend time and money, and then, when confronted with reality, vanish into thin air as if they were never here at all." Dkt. 210 at 3. Arkon's assertion is wholly unsupported by the trial record.

In its complaint, NPI pleaded alternative federal and state law theories of recovery relating to a single issue – Arkon's use of NPI's registered trade dress. Dkt. 1. At the final pretrial conference, the Court advised the parties that their proposed jury instructions did not clearly indicate what claims were being tried to the jury, and the Court encouraged the parties to narrow their claims and simplify the case to avoid juror confusion. NPI complied with the Court's suggestion and advised the Court it would no longer pursue its claims of Federal Unfair Competition and False Designation of Origin under 15 U.S.C. § 1125(a), as well as trademark infringement, unfair competition, and unjust enrichment in violation of Washington common law at trial. Thus, by limiting their claims to federal trademark infringement under 15 U.S.C. § 1114 and unfair business practices under the Washington Consumer Protection Act, NPI avoided presenting numerous overlapping claims to the jury. The claims which NPI raised in the complaint, but did not present at trial, were not frivolous and did not waste valuable time, or cause unnecessary expense or delay. It is a common pretrial practice for parties to narrow their list of claims to be tried at trial, and NPI is not liable for attorney's fees simply because it wisely avoided trying overlapping and duplicative claims. Indeed, Arkon's request overlooks the fact that NPI prevailed on its trademark infringement claim at trial.

Moreover, Arkon's assertion that it will be harmed if the judgment is not amended to explicitly include a reference to each of these claims is incorrect. The Federal Rules of Civil

Procedure do not require the judgment to explicitly address each claim that was asserted in a complaint, including those claims that the parties ultimately elected not to try. *Res judicata* bars litigation in a subsequent action of any claims that were raised, *or could have been raised*, in the prior action. *Owens v. Kaiser Found. Health Plan, Inc*., 244 F.3d 708, 713 (9th Cir. 2001); *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1192 (9th Cir. 1997).[15] Thus, the Court denies Arkon's request to amend the judgment in this matter, as *res judicata* will operate to bar claims by NPI that could have been adjudicated in this action, regardless of whether a formal dismissal was entered under Rule 41 as to those claims. Arkon's motion to amend the judgment to address NPI's untried claims is therefore DENIED.

Similarly, Arkon's attempt to argue the merits of its unclean hands and estoppel defenses for the first time in its Rule 59(e) motion is improper, as Arkon has once again failed to identify any proper basis for relief under that provision. Arkon has failed to show that NPI engaged in inequitable conduct necessary to establish unclean hands. Arkon also waived the affirmative defense of laches by failing to raise it in Arkon's Answer.[16] In any event, the trial record does not establish that Arkon suffered prejudice as a result of NPI's alleged delay in filing suit, as Mr. Brassard testified that Arkon would not necessarily have stopped selling the infringing products if it had received a copy of NPI's trademark registration certificate prior to

---

[15] The doctrine of *res judicata* applies when (1) the prior and present lawsuits involve identical claims, (2) there was a final judgment on the merits of the first action, and (3) there is privity between the two parties in both of the actions. *Frank v. United Airlines,* 216 F.3d 845, 850 (9th Cir. 2000). In considering whether claims are "identical," a court examines not whether the exact same causes of action have been asserted, but rather "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Gospel Missions of America v. City of Los Angeles,* 328 F.3d 548, 555 (9th Cir. 2003). The fourth factor is the most important. *See ProShipLine Inc. v. Aspen Infrastructures Ltd.,* 609 F.3d 960, 968 (9th Cir. 2010).

[16] Failure to properly preserve an affirmative defense is not, as Arkon argues, simply "hair-splitting on the difference between estoppel and laches." Dkt. 210 at 7.

the CES Trade Show, because he thought the trade dress looked pretty weak. Similarly, Arkon did not immediately stop selling the infringing products when it was served with the complaint, and instead waiting another seven months to fully cease such sales.[17] Arkon's motion to alter or amend the judgment, Dkt. 196, is DENIED.

III.     CONCLUSION

For the foregoing reasons, the Court ORDERS as follows: NPI's renewed Rule 50(b) motion for judgment as a matter of law that Arkon violated the Washington Consumer Protection Act ("WCPA") (Dkt. 182) is DENIED; Arkon's unopposed motion to seal several exhibits (Dkt. 188) is GRANTED; Arkon's renewed Rule 50(b) motion for judgment as a matter of law (Dkt. 186) is DENIED; Arkon's motion for a new trial or remittitur (Dkt. 190) is DENIED, conditional upon NPI accepting a remittitur reducing the damages award from $193,598 to $167,239.55 and advising the Court of its position within thirty (30) days; and Arkon's motion to alter or amend the judgment (Dkt. 196) is DENIED. The Clerk is directed to send a copy of this Order to counsel for both parties.

DATED this 14th day of February, 2018.

_James P. Donohue_

JAMES P. DONOHUE
Chief United States Magistrate Judge

---

[17] Arkon was also allowed to keep its profits on sales of the infringing products for the full eighteen months before it was served with the complaint by NPI. Thus, it is not clear that Arkon was necessarily worse off by the purported delay in filing suit, than if NPI had brought this action immediately in January 2014.