The Honorable James P. Donohue

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NATIONAL PRODUCTS, INC.,

Plaintiff,

v.

ARKON RESOURCES, INC.,

Defendant.

No. C15-1553-JPD

ORDER DENYING NPI'S MOTION
FOR PERMANENT INJUNCTION

I. INTRODUCTION AND SUMMARY CONCLUSION

This matter comes before the Court on plaintiff National Products, Inc.'s ("NPI") motion for a permanent injunction against defendant Arkon Resources, Inc. ("Arkon"), following a jury verdict in NPI's favor on its trade dress infringement claim. Dkt. 219. Specifically, NPI requests an injunction that would, among other things, require Arkon to continue storing the infringing products indefinitely. Dkt. 219-1. Having reviewed the parties' submissions, the governing law, and the balance of the record, the Court DENIES NPI's motion. Dkt. 219. Arkon redesigned its products and ceased all sales of the infringing products by no later than April 30, 2016, rendering it unnecessary to permanently enjoin Arkon from future infringement. Instead, the Court ORDERS Arkon to destroy the part of the accused products that infringed NPI's trade dress. Although Arkon may salvage the product parts that do not bear the infringing trade dress, it may not dispose of the infringing products (or the double-socket mount arm

ORDER - 1

bearing NPI's hourglass shaped trade dress) in any manner other than destruction.

II. DISCUSSION

A. <u>Background</u>

The Court conducted a jury trial in this matter from December 4, 2017 to December 8, 2017, on NPI's claims against Arkon for infringement of NPI's federally registered trademark[1] in violation of the Lanham Act, 15 U.S.C. § 1114(1), as well as the Washington Consumer Protection Act ("WCPA"). NPI's trade dress is the hourglass shaped design of a mounting arm, which is used to attach a cell phone (or similar device) to a base in the interior of a vehicle. Arkon denied NPI's claims, arguing that NPI's trade dress was invalid as functional, as lacking secondary meaning, and as generic. Alternatively, if the jury found that NPI's trade dress was valid, Arkon argued that there was no infringement.

On December 8, 2017, the jury returned a verdict in NPI's favor on its trade dress infringement claim, finding that NPI's trade dress was valid, and infringed, and that the infringement was "deliberate or willful." However, the jury found in favor of Arkon on NPI's WCPA claim. The jury awarded NPI money damages in the amount of $193,598. Dkt. 177 (jury verdict). The Court entered judgment on December 11, 2017. Dkt. 179.

By Order dated February 14, 2018, the Court ruled on the parties' numerous post-trial motions. Dkt. 218. Specifically, the Court denied the parties' Rule 50(b) motions, as well as Arkon's motion for judgment as a matter of law and motion to alter or amend the judgment. *Id*.

---

[1] The trademark at issue, U.S. Trademark Reg. No. 4,254,086, covers "THE MARK CONSIST[ING] OF A THREE DIMENSIONAL CONFIGURATION OF A DOUBLE-SOCKET MOUNT ARM THAT IS TAPERED IN THE MIDDLE LIKE AN HOURGLASS." Trial Ex. 1 (U.S. Trademark Reg. No. 4,254,086). The Court will refer to this trademark as the trade dress, or the "hourglass shape trade dress," in the balance of this Order.

ORDER - 2

Finally, the Court denied Arkon's motion for a new trial as to damages, conditional upon NPI accepting a remittitur reducing the damages award in this case from $193,598 to $167,239.55. *Id.* To date, NPI has not responded to the Court's Order or otherwise indicated whether it accepts the remittitur in lieu of a new trial as to damages.

NPI's current motion asks the Court to enter a permanent injunction prohibiting Arkon from infringing NPI's registered trade dress by selling, distributing, donating, exporting, using, transferring, or otherwise moving or disposing of the Infringing Products (or any other products which infringe upon NPI's registered hourglass shape trademark). Dkt. 219-1 at 2. Because Arkon would be prohibited from disposing of the products in any manner, NPI asks the Court to further require Arkon to "maintain records of its inventory of Infringing Products, to be made available to NPI at its request." *Id*.

B. Relevant Law

A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L.Ed.2d 641 (2006). *See also Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (holding that "the traditional four-factor test employed by courts of equity, including the requirement that the plaintiff must establish irreparable injury in seeking a permanent injunction" applies not only in the patent and copyright context, but "the same principle applies to trademark

infringement under the Lanham Act."). In addition, the Lanham Act expressly states that courts "have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark...." 15 U.S.C. § 1116(a).

As to the first factor of the *eBay* test, the Ninth Circuit has held that "actual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action." *Herb Reed Enterprises, LLC,* 736 F.3d at 1249. Courts have recognized that in trademark cases, the irreparable harm may be shown through evidence of the loss of prospective customers, goodwill, or reputation. *See e.g., Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush & Co., Inc.,* 240 F.3d 832, 841 (9th Cir. 2001).

With respect to the second *eBay* factor, the plaintiff must show that "remedies available at law, such as monetary damages, are inadequate to compensate for the injury." *eBay,* 547 U.S. at 391. Courts have broadly accepted the general proposition that, even after the Supreme Court's decision in *eBay,* monetary damages alone are often inadequate to remedy trademark violations.

As to the third *eBay* factor, the court must consider and balance "the hardships that might afflict the parties by the grant or denial of Plaintiffs' motion for a permanent injunction." *Metro-Goldwyn-Mayer Studios, Inc. et al. v. Grokster, Ltd.*. 518 F.Supp.2d 1197, 1220 (C.D. Cal. 2007). Specifically, the court looks at the plaintiff's hardship if the infringing behavior does not stop, as well as the defendant's hardship in refraining from its infringement. *See, e.g.*, *Getty Images (US), Inc. v. Virtual Clinics*, Case No. C13-626-JLR, 2014 WL 358412 (W.D. Wash. 2014); *Amini Innovation Corp. v. KTY Intern. Mktg.,* 768 F.Supp.2d 1049, 1057 (C.D. Cal.

ORDER - 4

2011). A court may find that the balance of hardships favors a defendant, for example, where there is a "separate legitimate business purpose" for the infringement. *See MGM,* 518 F.Supp.2d at 1220.

Finally, under the fourth factor, a permanent injunction is appropriate only if it will serve the public, such as by protecting the rights of trademark holders against infringement or minimizing consumer confusion. *See Brookfield Commc'ns, Inc. v. West Coast Entertainment Corp.,* 174 F.3d 1036, 1066 (9th Cir. 1999) (noting that injunctive relief may be appropriate "to promote the public interest in protecting trademarks generally").

C. <u>NPI's Motion for a Permanent Injunction is Denied</u>

*1. Irreparable Injury*

The Court has considered each factor of the *eBay* test in light of the evidence presented at trial, and concludes that the four-factor test does not support granting permanent injunctive relief to NPI. With respect to the first factor, NPI argues that it will suffer irreparable harm in the absence of an injunction. Dkt. 219 at 7. NPI argues that irreparable injury is still generally presumed in the trademark context in the Ninth Circuit, and therefore the jury's verdict finding that Arkon infringed NPI's trade dress is sufficient to show irreparable harm in this case. *Id*. Alternatively, NPI argues that the trial record shows that Arkon's conduct caused actual injury to NPI based on evidence of loss of customers, as well as harm to its reputation and goodwill. Finally, NPI asserts that Arkon's counsel has indicated in email correspondence that it may dispose of the infringing products by selling them to distributors based outside the United States, and has even requested identification of countries in which NPI has trade dress rights. *Id*. at 9. Thus, NPI is concerned that Arkon intends to sell the infringing products to foreign distributors,

which would cause ongoing and irreparable harm NPI when these products inevitably make their way back to the United States market.

Arkon responds that NPI cannot show irreparable harm, as Arkon ceased sales of the accused products nearly two years ago. Dkt. 221 at 3. Arkon asserts that no presumption of irreparable harm can exist in this case, as such a presumption was disapproved by the U.S. Supreme Court. *Id*. at 4 (citing *eBay*, 547 U.S. at 394) (holding that the appellate court below erred by presuming as a general proposition that a permanent injunction will issue once infringement and validity have been determined, and should be denied only in "unusual cases"). *See also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 172 L.Ed.2d 249 (2008) ("[T]he Ninth Circuit's "possibility" standard is too lenient. Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction."). Arkon argues that NPI offered no evidence that irreparable harm has actually been caused to NPI, or that Arkon's product shape adversely affected NPI's reputation or sales. Dkt. 221 at 5 (citing *Herb Reed Enters.*, 736 F.3d at 1249-50 (noting that following *eBay* and *Winter*, "actual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action")).

As a threshold matter, NPI's contention that the Court should presume irreparable harm and grant NPI a permanent injunction, based solely upon the jury's finding of trade dress infringement, is wholly inconsistent with the U.S. Supreme Court's holdings in *eBay* and *Winter*. NPI's suggestion that this presumption persists in the Ninth Circuit, despite contrary U.S. Supreme Court precedent, also falls flat. *See e.g., Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011) (holding that "presuming irreparable harm . . . is

ORDER - 6

inconsistent with, and disapproved by, the Supreme Court's opinions in *eBay* and *Winter*"). As noted above, the Ninth Circuit has also held that "*actual irreparable harm* must be demonstrated to obtain a permanent injunction in a trademark infringement action." *Herb Reed Enters.,* 736 F.3d at 1249 (emphasis added). NPI is not entitled to a presumption of irreparable harm simply because the jury in this case could reasonably find in its favor on its trade dress infringement claim.

Although at trial NPI offered evidence of potential loss of prospective customers, as well as harm to NPI's goodwill or reputation sufficient to support the jury's finding of likelihood of confusion, other circumstances in this case indicate that NPI will not suffer actual irreparable harm in the absence of a permanent injunction. As the Court has previously noted, NPI's hourglass shaped trade dress is a weak (rather than strong) mark, and NPI has provided only weak evidence of actual consumer confusion. Moreover, the evidence of record shows that Arkon's infringement of NPI's trade dress resulted from an effort to produce a competing product related to NPI's expiring patent, rather than a deliberate effort by Arkon to confuse customers into purchasing Arkon's products. Most importantly, Arkon stopped selling the infringing products nearly two years ago, and has been selling a redesigned product in the interim. As long as Arkon is prevented from selling or otherwise distributing the infringing products back into the marketplace – such as by destroying the remaining infringing inventory – there is no reason to believe that NPI will suffer irreparable harm in the future absent a permanent injunction.

2. *Adequacy of Monetary Damages*

With respect to the second *eBay* factor, the plaintiff must show that "remedies available at law, such as monetary damages, are inadequate to compensate for the injury." *eBay,* 547 U.S. at 391. Trademark law gives federal courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable…" 15 U.S.C. § 1116.

The Court agrees with NPI that monetary damages alone may be inadequate to fully protect NPI's interests, in light of Arkon's representation that it would like to export and sell its remaining inventory of infringing products to foreign markets. This Arkon may not do, especially because Arkon sells its products for private labeling and therefore Arkon's infringing products could easily make their way back to the United States, causing consumer confusion and further harm to NPI. *See Trader Joe's Company v. Hallatt*, 835 F.3d 960, 969 (9th Cir. 2016) (applying the three-part *Timberlane* test for determining whether the Lanham Act applies extraterritorially, which includes determining whether "(1) the alleged violations . . . create some effect on American foreign commerce; (2) the effect [is] sufficiently great to present a cognizable injury to the plaintiffs under the Lanham Act; and (3) the interests of and links to American foreign commerce [are] sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority."); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 428 (9th Cir. 1977) ("the extraterritorial coverage of the Lanham Act should be gauged not so much by the locus of the activity sought to be reached . . . as by the nature of its effect on that commerce which Congress may regulate," and the effect need not be "substantial"). However, the Court also finds that a remedy short of a permanent injunction, *i.e.,*

ordering the destruction of Arkon's remaining inventory of infringing products, would adequately protect NPI's future interests.

Arkon's conduct to date, such as its swift efforts at amelioration when this case was filed, demonstrate that a permanent injunction is not called for, and could actually generate unnecessary future litigation. The Court has repeatedly found that there was no evidence that Arkon was actually aware of NPI's registered mark prior to being served in this action on October 2, 2015. Although the jury could reasonably find that Arkon acted with willful blindness by failing to conduct a thorough investigation of NPI's trademark rights before it began making and selling the infringing products, there is no dispute that Arkon had completely stopped selling the originally designed products by no later than April 30, 2016. Between October 2, 2015 and April 30, 2016, the parties were engaged in settlement discussions and Arkon was redesigning its products in good faith to cease any potential infringement. Under these circumstances, destruction of the infringing portions of the accused products (rather than a permanent injunction) could adequately resolve NPI's concerns, as there is no present and continuing infringement of NPI's trade dress.

   3. *Balance of Hardships*

NPI asserts that Arkon's "continued infringement would result in irreparable harm to NPI, including continued likelihood of confusion, loss of control over its reputation and goodwill, and loss of sales and customers." Dkt. 219 at 10. Arkon responds that it has already been storing the inventory of infringing products for over 22 months at its own expense, and "NPI's requested injunction requiring Arkon to store that inventory forever would obviously constitute substantial expense." Dkt. 221 at 6. Arkon further argues that requiring Arkon to

ORDER - 9

destroy inventory having some value would also constitute an unnecessary hardship that is partly of NPI's making, which is why Arkon wishes to export its remaining inventory for sale or disposal outside of the U.S. *Id.*

The Court finds that the balance of the hardships does not favor granting NPI's request for a permanent injunction in this case, because of the undue hardship that NPI's request for injunctive relief, as framed, would impose on Arkon. Since April 2016, Arkon has been storing its inventory of accused products at its own expense. It would pointless to require Arkon to continue to expend resources to store the infringing products indefinitely, and yet this is exactly what NPI asks the Court to do. Specifically, the permanent injunction requested by NPI would prohibit Arkon from "returning, transferring, or otherwise moving or disposing in any matter the Infringing Products," and would require Arkon to "maintain records of its Infringing Products, to be made available to NPI at its request." Dkt. 219-1. The Court finds that such a permanent injunction would cause an undue hardship to Arkon.

As mentioned above, however, it would also impose an undue burden on NPI – and undercut the jury's verdict in this case – to allow Arkon to sell or otherwise dispose of the infringing products in foreign markets. Thus, although the balance of hardships does not favor NPI's request for a permanent injunction requiring Arkon to continue storing the infringing products indefinitely, the Court does find that Arkon must destroy the product part (the hourglass shaped mounting arm) that infringes NPI's trade dress. The remaining parts of the device do not need to be destroyed. This destruction will adequately prevent any further harm to NPI.

*4. Public Interest*

The Court finds that the public interest would be disserved by a permanent injunction that would require Arkon to store the infringing products indefinitely. The public's interest in protecting the rights of trademark holders against infringement, and minimizing consumer confusion, were satisfied when Arkon redesigned its products and stopped selling the infringing products in April 2016. Moreover, NPI has been financially compensated for any harm by the jury's verdict awarding monetary damages, thereby honoring the public's interest in protecting the rights of trademark holders. A permanent injunction would not meaningfully affect consumer's interests, as any potential consumer confusion would have ceased when Arkon stopped selling the infringing products. Finally, the overly-litigious nature that the parties have demonstrated to date would guarantee continuous returns to the court to fight over whether a product redesign by Arkon fell within the terms of any injunction. This is definitely not in the public interest. As a result, the final *eBay* factor does not favor NPI's request for injunctive relief.

### III. CONCLUSION

Accordingly, the Court finds that the four *eBay* factors do not favor NPI's request for a permanent injunction requiring Arkon to store the infringing products indefinitely, and NPI's motion, Dkt. 219, is DENIED. As Arkon may not lawfully dispose of its infringing products in foreign markets, however, the Court ORDERS Arkon to destroy the part of the accused products (restricted to the double socket mounting arm with an hourglass shape) that infringed NPI's trade dress. *See Trader Joe's Co.*, 835 F.3d at 969-75 (holding that *Timberlane*'s three prongs favor extraterritorial application of the Lanham Act). Although Arkon may salvage the product parts

ORDER - 11

that do not bear the infringing trade dress, it may not dispose of the infringing products (or the double-socket mount arm bearing NPI's hourglass shaped trade dress) in any manner other than destruction. The parties are directed to meet and confer about the destruction process within **fifteen (15) days** and reach agreement consistent with this Order, if possible.

The Clerk is directed to send copies of this Order to counsel for both parties.

DATED this 5th day of March, 2018.

*[signature: James P. Donohue]*

JAMES P. DONOHUE
United States Magistrate Judge